[Crim. No. 12093. First Dist., Div. Three. July 8, 1974.]

THE PEOPLE, Plaintiff and Respondent, v.
RALPH H. BARGER, JR., Defendant and Appellant.

**COUNSEL**

James Leonard Crew for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, Robert R. Granucci and Ronald E. Niver, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**BROWN (H. C.), J.**—This is an appeal from a judgment of conviction, after trial by jury, of violation of Health and Safety Code section 11351 (possession of heroin for sale); Health and Safety Code section 11350 (possession of cocaine); Health and Safety Code section 11910 (possession of Secobarbital); and Health and Safety Code section 11530 (possession of marijuana). These counts had been severed from charges of murder and arson of which appellant was acquitted prior to the trial herein reviewed.

Appellant was sentenced to terms of imprisonment to run concurrently for the violation of possession of cocaine, Secobarbital and marijuana.

These terms were to be consecutive to the sentence of appellant for possession of heroin for sale.

Appellant challenges the search warrant affidavit leading to the discovery of the drugs and also claims error in the conduct of his trial and error in the imposition of the sentences. We believe that none of appellant's contentions has merit.

The affidavit for the search warrant in substance stated that Sgt. Simonson, an Oakland police officer, received information from an informant that he was present in a house in Oakland where he observed one Servio Agero in possession of heroin and cocaine; that he was also present when Agero was murdered; that appellant at that time had a handgun in his possession which had a silencer on the barrel; that he observed appellant and others place the body of Agero in a bathtub; and that he thereafter observed appellant set fire to the house. He also observed appellant carrying the blue molded suitcase which contained the heroin and cocaine in the Barger residence. The affidavit further stated that appellant's residence was 9508 Golf Links Road in Oakland. On the basis of this affidavit, the search warrant was issued. The search pursuant to the warrant resulted in the discovery of a quantity of heroin, cocaine, marijuana and Secobarbital in appellant's residence.

Appellant testified in his own behalf on December 19, 1972, during the course of his murder trial. He admitted that he had hidden the narcotics and dangerous drugs in his residence. He explained that he was a narcotics dealer and that part of the $2,000 found in his bedroom may have been received through the sale of narcotics. Appellant further stated that one Richard Ivaldi had brought the heroin to his residence the week before it was seized and that he had intended to sell the heroin or to trade it for guns.

Appellant again testified in the case at bar. He claimed that he traded contraband for automatic weapons which he would then surrender to law enforcement agencies.

Appellant first contends that the affidavit of Sgt. Simonson did not contain factual information from which the magistrate could reasonably conclude that the informant Ivaldi was reliable.

It is well settled that "In order for an affidavit based on an informant's hearsay statement to be legally sufficient to support the issuance of a search warrant, two requirements must be met: (1) The affidavit must allege the informant's statement in language which is factual rather

than conclusionary and must establish that the informant spoke with personal knowledge of the matters contained in the statement; and (2) the affidavit must contain some underlying factual information from which the magistrate issuing the warrant can reasonably conclude that the informant was credible or his information reliable. [Citations.]" *(People* v. *Superior Court* (1972) 6 Cal.3d 704, 711 [100 Cal.Rptr. 319, 493 P.2d 1183].)

■ The affidavit clearly satisfies the first test of what is often referred to as the "two-prong *Aguilar* test"; nor does appellant contend otherwise. Rather, appellant's complaint is that the face of the affidavit does not contain sufficient factual information to permit the magistrate to conclude that the informant was reliable.

Reliability of an informer is commonly established by evidence that the informer has been reliable in the past and by corroboration of the informer's information. *(People* v. *Scoma* (1969) 71 Cal.2d 332, 338 [78 Cal.Rptr. 491, 455 P.2d 419].) Appellant likens this case to *Scoma* where the Supreme Court held that corroborative evidence was not sufficient to establish reliability where criminal activity on the part of the suspect was not corroborated. Here, as in *Scoma*, observations of the police established that the criminal activity described by the informant did occur but did not corroborate the suspect's participation.

The instant case is distinguishable from *Scoma* in two respects. First, the court in *Scoma* emphasized that the affidavit stated, "no facts indicating *past police experience* with the informant." (71 Cal.2d at p. 338.) Reliability, therefore, had to be established by corroborative evidence alone. Here, however, the affidavit stated facts showing that the informant had provided accurate information concerning another murder. The informant had previously told police that three named individuals had told informant that they had killed a woman on May 16, 1972, and had placed her body in the trunk of a 1955 blue Ford parked in Oakland between Lincoln and 35th Avenue above MacArthur Boulevard. The police found both the car and body and determined that the car had been parked at that location since approximately May 16. No charges could be brought against the three named individuals because they were shot to death on May 26. Nevertheless, the information was accurate insofar as it could be verified.

Secondly, *Scoma* was a case in which the magistrate found that the reliability of the informant was not established. The Supreme Court's role was thus to determine if the evidence supported this finding. The task of this court is to decide if the evidence supports a finding of re-

liability. (See *People* v. *Superior Court, supra,* 6 Cal.3d 704, 715, dissenting opinion, and cases cited.)

In the case at hand, the magistrate could reasonably have inferred that informant's accusations were reliable, partly from the fact that other information supplied by Ivaldi had been reliable and partly from the corroboration of many details of the information supplied. (See *People* v. *Dumas* (1973) 9 Cal.3d 871, 876 [109 Cal.Rptr. 304, 512 P.2d 1208]; *People* v. *Webb* (1973) 36 Cal.App.3d 460, 469 [111 Cal.Rptr. 524].)

■ Appellant also argues that the magistrate's finding of reliability cannot be upheld because facts relevant to reliability were withheld from the magistrate. At the hearing pursuant to Penal Code section 1538.5, counsel for defendant Smith offered to prove that three days prior to the date of the affidavit, Sheriff's Detective Madsen had obtained a recorded statement from Ivaldi, the informant, in which the informant stated that he was not at the scene of the murder and knew nothing about it. The court sustained an objection on the ground that Madsen had not reported this to the affiant, Officer Simonson, and, therefore, he could not relate them to the magistrate. The court concluded that only the facts in the affidavit could be used to test reliability.

In *Theodor* v. *Superior Court* (1972) 8 Cal.3d 77, 90, 100-101 [104 Cal.Rptr. 226, 501 P.2d 234], the Supreme Court decided that a defendant may go behind the face of the affidavit in an effort to prove there was no probable cause for the issuance of the warrant. Although *Theodor* was concerned with factual inaccuracies in the affidavit not omissions, the principle upon which the holding rests is the same in either situation. The Supreme Court pointed out that false or inaccurate information in an application for a warrant adversely affects the normal inference-drawing process of the magistrate. (8 Cal.3d at p. 96.) The magistrate's inference-drawing process would also be hindered if the affiant were permitted to "edit" his informant's allegations by omitting unfavorable facts. This court has itself noted that "[a]ny facts which bear on the reliability of the citizen who has furnished the information should . . . be revealed in the affidavit. . . . Only by consideration of facts relevant to reliability, can the magistrate make the independent determination of reliability required by the rule of *Aguilar.*" (*People* v. *Legard* (1970) 12 Cal.App.3d 1006, 1010 [91 Cal.Rptr. 257].)

The requirement that relevant information may not be withheld from the magistrate is consistent with the duties imposed upon the prosecution

in presenting evidence either at preliminary hearings or before grand juries. In these instances, the prosecution is under a duty not to conceal or suppress evidence negating guilt. (See *Johnson* v. *Superior Court* (1974) 38 Cal.App.3d 977, 990 [113 Cal.Rptr. 740], citing cases.)

In *Theodor*, the court decided that if the affiant acted unreasonably in making factual mistakes, those errors must be excised from the affidavit before testing the existence of probable cause. If the affiant did not act unreasonably, the affidavit would be judged with the erroneous information retained. The court did not reach the issue of whether the use of intentional misstatements should result in automatically quashing the warrant. (8 Cal. 3d at p. 101, fn. 14.) Using this approach, the affidavit in the instant case should be tested by including the omitted information regarding reliability, reasoning that Officer Simonson acted negligently in not ascertaining the results of all questioning of the informant and informing the court.

It is concluded, however, that the additional information does not destroy a finding of reliability. It is logical for the informant to have originally denied being present at a residence where a killing had occurred. As respondent points out in another context, such an admission is against his interest. The omitted fact does not affect the specific evidence supporting a finding of reliability—the past informing instance or the corroboration of details. It is concluded that the affidavit, even including the prior inconsistent statement, supports a finding of probable cause.

■ Appellant next contends that it was error to deny the motion to disqualify the trial judge.

Appellant filed a motion for peremptory disqualification of the trial judge pursuant to Code of Civil Procedure section 170.6 on December 29, 1972. The judge supervising the master calendar of the Alameda County Superior Court had assigned the cause for trial on August 2, 1972. The motion, therefore, was not timely under section 170.6, subdivision (2), which provides in pertinent part: "If directed to the trial of a cause where there is a master calendar, the motion shall be made to the judge supervising the master calendar not later than the time the cause is assigned for trial." (See *People* v. *Gibbs* (1970) 12 Cal.App.3d 526, 537-538 [90 Cal.Rptr. 866]; *People* v. *Genser* (1967) 250 Cal.App.2d 351, 362-363 [58 Cal Rptr. 290]; see also *People* v. *Escobedo* (1973) 35 Cal.App.3d 32, 40, fn. 4 [110 Cal.Rptr. 550].) If, as appellant suggests in his brief, the motion to disqualify was prompted by the experience of appellant in the

murder and arson trial held after August, appellant could have proceeded under section 170. Section 170.6, however, was no longer available to him.

█ We have also concluded that there was no merit to appellant's motion for change of venue on the basis of pretrial publicity. Appellant was originally charged with murder and arson, in addition to the charges for which he now stands convicted. Six days prior to the commencement of the present trial, appellant was acquitted of the murder and arson charges. He then moved for a change of venue, which motion was denied.

In *Maine* v. *Superior Court* (1968) 68 Cal.2d 375, 383-384 [66 Cal. Rptr. 724, 438 P.2d 372], the California Supreme Court held that a motion for a change of venue or continuance must be granted whenever it is determined that due to dissemination of potentially prejudicial material there is a reasonable likelihood that a fair trial cannot be had in the absence of such relief. It was also held therein that appellate courts must make an independent evaluation of the evidence to determine whether a defendant has obtained a fair and impartial trial. (68 Cal.2d at p. 382; see *People* v. *Salas* (1972) 7 Cal.3d 812, 817 [103 Cal.Rptr. 431, 500 P.2d 7].) When the issue is raised on appeal, inferences of possible prejudice may be refuted "by the actualities of *voir dire* and of trial." (*People* v. *Quinlan* (1970) 8 Cal.App.3d 1063, 1070 [88 Cal.Rptr. 125]; see also *People* v. *Hathcock* (1973) 8 Cal.3d 599, 620 [105 Cal.Rptr. 540, 504 P.2d 476]; *People* v. *Salas, supra,* at pp. 818-819.)

The newspaper articles submitted to the trial court to show the extent and nature of the pretrial publicity included numerous articles at the time of the arrests of appellant and other members of the Hell's Angels and at the time of the murder trial. The drug charges giving rise to the later trial are accorded scant attention in comparison. The newspaper coverage lasted until the end of the murder trial and included in large part reports of evidence which was presented to the jury.

It is concluded that the trial court did not err in denying the motion for change of venue. The fact that appellant was tried in a populous county with a heterogeneous and cosmopolitan population in itself is a factor which indicates the possibility of securing jurors unaffected by pretrial publicity. (See *People* v. *Salas, supra,* 7 Cal.3d 812, 818; *People* v. *Sommerhalder* (1973) 9 Cal.3d 290, 304 [107 Cal.Rptr. 289, 508 P.2d 289].) This possibility was realized in the acquittal of appellant of murder and arson by an Alameda jury subjected to the same potentially prejudicial news coverage of a story directly related to the first trial.

The *voir dire* of several of the prospective jurors revealed that there was but vague knowledge of appellant's first trial. The trial court admonished the jury to disregard any disseminated information regarding appellant's association with the Hell's Angels. Furthermore, the record of the trial reveals that appellant's membership in the Hell's Angels and his connection with the murder and arson were not stressed during trial. There is no reason in this case to suppose that the jurors would violate their oath to be fair and impartial. (See *People* v. *Welch* (1972) 8 Cal.3d 106, 114 [104 Cal.Rptr. 217, 501 P.2d 225].)

■ Appellant further claims that he was wrongfully denied his right to reasonably examine the jurors during the process of their selection. (Pen. Code, § 1078.) In *People* v. *Crowe* (1973) 8 Cal.3d 815 [106 Cal. Rptr. 369, 506 P.2d 193], the Supreme Court held that section 1078 permits a procedure of *voir dire* in which the court examines prospective jurors and limits participation by counsel to the submission of written questions "which, if the court finds them within the scope of reasonable examination, the court itself propounds to the jurors." (8 Cal.3d at p. 829.)

Appellant believes that the trial court violated one of the principles of *Crowe* by refusing to ask questions which appellant deemed reasonable and pertinent and, particularly, to allow counsel himself to conduct "in-depth" examinations of certain of the jurors. Appellant wished to explore in certain instances the nature of the juror's attitudes about narcotics and Hell's Angels in general and his familiarity with the circumstances of the case. These subjects formed the basis of questions posed by the court in asking the jurors whether the nature of the charges or appellant's association with the Hell's Angels would affect their ability to be fair and impartial. It is noted that the court's questioning exposed as potentially biased 10 of the 49 prospective jurors and that defense counsel moved for a mistrial when a juror articulated the type of preconceptions which counsel's proposed "in-depth" questioning was designed to elicit. The court's method of *voir dire* sought to achieve a reasonable balance in a delicate area, insuring that relevant questions were asked without undue stress upon areas of notoriety potentially prejudicial to a just disposition of the cause. There was no abuse of discretion.

■ Appellant's final contention is that the imposition of sentence on all four counts violates Penal Code section 654 because he had a common intent and objective in his possession and sale of the various drugs, i.e., to use drugs as the consideration in the purchase of automatic weapons to turn over to law enforcement agencies.

This issue has been decided adversely to appellant's contention. California courts have uniformly held that section 654 does not preclude multiple punishment for simultaneous possession of various narcotic drugs. (*People* v. *Fusaro* (1971) 18 Cal.App.3d 877, 893-894 [96 Cal.Rptr. 368], cert. den., 407 U.S. 912 [32 L.Ed.2d 686, 92 S.Ct. 2445]; *People* v. *Bell* (1968) 258 Cal.App.2d 450, 452 [65 Cal.Rptr. 730]; *People* v. *Lockwood* (1967) 253 Cal.App.2d 75, 82-83 [61 Cal.Rptr. 131]; *People* v. *Lopez* (1959) 169 Cal.App.2d 344, 350-351 [337 P.2d 570]; see also *In re Hayes* (1969) 70 Cal.2d 604, 606-607 [75 Cal.Rptr. 790, 451 P.2d 430].) Nor does section 654 forbid multiple punishment of possession of one illegal substance and possession for sale of another form of contraband. Even the sale and possession of the same drug can be punished separately if the sale consumes only part of a defendant's entire inventory of drugs. (*People* v. *Fusaro, supra,* 18 Cal.App.3d 877, 894.) Since the offenses with which appellant was charged were separately punishable, the trial court had discretion to determine that sentences were to run consecutively. (Pen. Code, § 669.)

The judgment is affirmed.

Draper, P. J., and Devine, J.,* concurred.

Appellant's petition for a hearing by the Supreme Court was denied September 5, 1974.

---

*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.