[Civ. No. 2789. Fifth Dist. Apr. 21, 1976.]

KARL STEPHAN MORRIS, Petitioner, v.
THE SUPERIOR COURT OF MERCED COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

522

## COUNSEL

John W. Ellery, Public Defender, and James M. Barnett, Deputy Public Defender, for Petitioner.

No appearance for Respondent.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, Eddie T. Keller, Charles P. Just and Nancy L. Sweet, Deputy Attorneys General, for Real Party in Interest.

## OPINION

**GARGANO, J.—** The question presented in this proceeding is of constitutional dimensions; it is whether evidence adduced through the execution of a search warrant must be suppressed if the officer who procured the warrant intentionally withheld factual information from his supporting affidavit. We have concluded that the integrity of the judicial system must be preserved no matter how painful the result may be, and

that the evidence must be suppressed if the facts intentionally withheld from the affidavit were material and relevant, to the extent that it can be said, fairly, that the magistrate's inference-drawing process was interfered with, substantially.

On June 14, 1975, an unknown person or persons broke into the home of Alverez Arceo in Merced, California, and took a six-string Gibson standard electric guitar and a black guitar case. Two days later Arceo reported the burglary to the City of Merced Police Department; Detective Gary Southerland was placed in charge of the investigation.

On June 18, Arceo informed Detective Southerland that a neighbor, Clifton Robinson, offered to return the stolen guitar for $10. Robinson was known to Southerland as a person on the "fringes" of crime, and believing that the suspect was involved in the burglary, the detective went to Robinson's home and interrogated him. The suspect explained that he knew what the stolen guitar looked like because he had seen it in Arceo's house on several occasions and that he merely told his neighbor that he wanted $10 to find it. Southerland informed Robinson that he could be prosecuted for burglary. Upon further interrogation Robinson told Southerland that the guitar was in petitioner's house; he also produced the stolen guitar case and gave it to the detective. Then Southerland asked Robinson if he knew where to obtain some marijuana, and when the suspect said that he did a controlled marijuana buy was arranged.

On the evening of June 18, Detective Southerland and a fellow law enforcement officer, Detective West, drove Robinson to a location on "I" Street in the City of Merced; West watched Robinson walk through an alley toward the 200 block of 17th Street; then Southerland saw Robinson exit from the end of the alley and approach someone; a few minutes later Robinson returned to West with some marijuana; subsequently, he told the detectives that the person from whom he had purchased the marijuana had 1,300 lids of the contraband in his car.

On June 19, 1975, Detective Southerland obtained a search warrant authorizing the search of petitioner's house for the guitar, and the police executed the warrant on the same day; the stolen guitar was found in the house. The warrant was issued upon Southerland's supporting affidavit which read in pertinent part as follows:

"That on June 18, 1975, a reliable confidential informant advised the affiant that he, the informant observed on the . . . premises [at 623 West 7th Street in the City of Merced] within the past three days [a Gibson standard six-string electric guitar, yellow and brown in color]. The informant stated that he has observed the guitar in the possession of a A. Arceo in the past and that he is familiar with the guitar and the fact that it belongs to Arceo. Affiant further deposes and states that Arceo reported the guitar taken from his residence on June 14, 1975 and Arceo made a report to the Merced Police Department on June 16, 1975 in which the guitar was reported stolen. . . .

"Affiant further deposes and states that the aforementioned informant is reliable inasmuch as he has provided information and rendered assistance to the affiant that has led to the obtaining of marijuana during a controlled buy of narcotics."

On September 18, 1975, an information was filed in the Superior Court of Merced County, charging petitioner with burglary in violation of section 459 of the Penal Code; in a second count petitioner was charged with receiving stolen property in violation of subdivision 1 of section 496 of the Penal Code. He entered pleas of not guilty to both charges. Thereafter, petitioner noticed a motion pursuant to section 1538.5 of the Penal Code to suppress the evidence obtained in the execution of the search warrant; the basis for the motion was that critical information in the affidavit in support of the search warrant was furnished by the informant, Clifton Robinson, and that Detective Southerland deliberately withheld pertinent factual information pertaining to the informant's reliability.

On October 24, 1975, after a de novo hearing in respondent court, petitioner's suppression motion was denied even though the People presented no evidence explaining why the pertinent factual information was omitted from the affidavit. Then petitioner petitioned this court for a writ of mandate to compel the lower court to grant his motion to suppress the evidence. Because we were impressed by the importance of the question presented, we issued an order to show cause.

■ It now is settled that pursuant to a 1538.5 suppression motion a person charged with a crime founded upon evidence adduced through the execution of a search warrant may go behind the face of the supporting affidavit in an effort to prove that there was no probable cause for the issuance of the warrant. (*Theodor* v. *Superior Court* (1972) 8

Cal.3d 77, 90-95 [104 Cal.Rptr. 226, 501 P.2d 234].) Therefore, an accused may show that the affidavit contains factual misstatements or material factual omissions which could have had an adverse effect upon the normal inference-drawing process of the magistrate.

■ If the factual misstatements are not intentional and are the result of reasonable conduct, they are retained in the document and probable cause is tested by what appears upon the face of the affidavit; on the other hand, if the factual misstatements, though not intentional, are the result of negligent conduct, they must be excised and probable cause tested from the remaining information. (*Theodor* v. *Superior Court, supra,* 8 Cal.3d 77, 95-101.) ■ Likewise, if material factual omissions are not intentional and are reasonable under the circumstances, the omitted matters are disregarded and the existence of probable cause is tested by whatever appears upon the face of the affidavit; if the failure to include material information, though not intentional, is negligent, the omitted facts are added to the affidavit and probable cause is tested in light of the additional information. (*People* v. *Barger* (1974) 40 Cal.App.3d 662, 668-669 [115 Cal.Rptr. 298].)

■ Left unanswered is the fundamental question which arises when factual misstatements are intentional (*Theodor* v. *Superior Court, supra,* 8 Cal.3d 77, 101, fn. 14), or when material information is omitted deliberately (*People* v. *Barger, supra,* 40 Cal.App.3d 662, 669).

The Attorney General argues that Detective Southerland acted "negligently" in failing to disclose in the affidavit all of the facts known to him pertaining to his informant's reliability. He seizes upon the *ratio decidendi* of the *Barger* opinion to argue that the detective's affidavit must be tested with the omitted matter included. The Attorney General concludes that when the omitted information is included, it strengthens the reliability of the informant because the affidavit shows that Robinson not only "provided information and rendered assistance" leading to a controlled buy of the marijuana but his statement to Detective Southerland concerning the whereabouts of the stolen guitar was a declaration against penal interest. (See *Skelton* v. *Superior Court* (1969) 1 Cal.3d 144, 154, fn. 7 [81 Cal.Rptr. 613, 460 P.2d 485]; *Ming* v. *Superior Court* (1970) 13 Cal.App.3d 206, 214 [91 Cal.Rptr. 477]; see also *United States* v. *Harris* (1971) 403 U.S. 573, 583-584 [29 L.Ed.2d 723, 733-734, 91 S.Ct. 2075, 2082].)

We are not persuaded by this argument. Detective Southerland knew that his informant was totally unreliable. Robinson was a person bordering upon the "fringes" of crime, and the detective had good cause to suspect that he participated in the theft of Arceo's guitar; the suspect had offered to return the guitar to its owner for $10, and he had the stolen guitar case in his home. It was for this very reason that Southerland asked the suspect if he knew where to obtain some marijuana and then proceeded to create an aura of reliability by arranging a controlled buy. Yet the detective deliberately omitted all of these pertinent facts from his affidavit. Instead, he worded the affidavit in the manner to suggest to the unsuspecting reader that the informant was reliable because he provided information leading to a controlled buy of marijuana *before* he told the detective that he had seen the stolen guitar in petitioner's house. Clearly, the conduct of the detective transcended negligence.

Furthermore, the factual information Southerland omitted from his affidavit was material, in the sense that it could have negated the magistrate's finding of probable cause. (*Theodor* v. *Superior Court, supra,* 8 Cal.3d 77, 96, fn. 11; see also *United States* v. *Averell* (E.D.N.Y. 1969) 296 F.Supp. 1004, 1018; cf. *People* v. *Rummler* (1975) 44 Cal.App.3d 638, 643 [118 Cal.Rptr. 872].) Robinson did not inculpate petitioner until he realized that he was himself a suspect about to be arrested for the burglary; his statements were in large part exculpatory. Then, the informant agreed to participate in a controlled buy at Southerland's suggestion, obviously, to curry favor with the police. It is conceivable that if the detective had disclosed all of the facts in his affidavit, the magistrate might have determined that the informant was unreliable and his information untrustworthy; the magistrate could have believed that Robinson told Southerland that the guitar was in petitioner's house and then agreed to participate in a controlled buy to shift the blame on someone else until he could rid himself of the stolen instrument.

■ It is uncontestable that an officer who is seeking a search warrant has a duty to disclose to the magistrate all material facts relevant to the issue of probable cause. (*People* v. *Barger, supra,* 40 Cal.App.3d 662, 668; *People* v. *Legard* (1970) 12 Cal.App.3d 1006, 1010 [91 Cal.Rptr. 257].) ■ It is also uncontestable that Detective Southerland failed to fulfill his burden and that the failure painted a distorted picture which adversely affected the normal inference-drawing process of the magistrate. In short, the detective's deliberate omission of material facts resulted in an affidavit that was factually inaccurate (*Theodor* v. *Superior*

*Court, supra,* 8 Cal.3d 77, 96, fn. 11; see also *United States* v. *Averell, supra,* 296 F.Supp. 1004, 1018; cf. *People* v. *Webb* (1973) 36 Cal.App.3d 460, 469-471 [111 Cal.Rptr. 524]), and it became the People's burden "to show proper justification" *(Theodor* v. *Superior Court, supra,* 8 Cal.3d 77, 102). The People failed to meet this burden, and we have no alternative but to order the suppression of the evidence.

We summarize briefly. This is not a case where an officer who prepared an affidavit in support of a search warrant intentionally omitted a few immaterial facts which he reasonably believed, in good faith, were irrelevant or inconsequential. Here the record leads, inescapably, to the conclusion that Detective Southerland not only concealed his own distrust of the informant and the information upon which the distrust was grounded but that he deliberately attempted to manufacture reliability through the auspices of a controlled buy and then concealed this important fact as well. To uphold the warrant now merely because it is arguable that the omitted information does not negate, necessarily, the existence of probable cause, would invite gross abuses by over-zealous law enforcement officers; it is precisely this type of police conduct the exclusionary rule was designed to discourage. (See *People* v. *Cahan* (1955) 44 Cal.2d 434 [282 P.2d 905, 50 A.L.R.2d 513].) If we were to uphold the search warrant under the facts of this case, we would impair, seriously, the independent-judgment-by-a-neutral-magistrate concept visualized by the framers of the Constitution as the safeguard needed to protect the citizens of this nation from unfettered and unreasonable police searches of homes and other sanctuaries. (See *Chapman* v. *United States* (1961) 365 U.S. 610, 614-615 [5 L.Ed.2d 828, 832-833, 81 S.Ct. 776, 778-779.)

We do not reach the question as to whether a police officer who receives information from an untested informant may establish reliability on the part of the informant by thereafter arranging a police buy of contraband as was done in this case. Nor do we answer the question as to whether Robinson's primarily exculpatory statement that the stolen guitar was in petitioner's house qualifies as a declaration against penal interest. (See *People* v. *Shipe* (1975) 49 Cal.App.3d 343, 352-354 [122 Cal.Rptr. 701].) Under the circumstances of this case, the search warrant must be quashed without regard to the effect of the omissions on probable cause.

Let a peremptory writ of mandate issue directing respondent court to suppress the evidence obtained in the execution of the search warrant in question.

**CARKEET, J.*—**I concur in the foregoing opinion and the reasoning underlying the same. I would enlarge upon one aspect of the case.

At the conclusion of the 1538.5 hearing in the superior court, the court stated: "I think under the circumstances of this case, the acts of the officer were proper . . . ." This could be inferred to be a finding that the affiant did not omit the material facts with a deliberate intent to deceive the magistrate, and removes from the case the issue of intentional bad faith falsification, whether by misstatement or omission.

In *Theodor* v. *Superior Court* (1972) 8 Cal.3d 77, 100-101 [104 Cal.Rptr. 226, 501 P.2d 234], the court held that the presence in an affidavit for a search warrant of inaccurate facts that were not intentional but were caused by unreasonable police activity, such as negligence, requires that such information be deleted and that the validity of the affidavit be tested by the remaining accurate information. The court noted: "We add that as the prosecution is thus barred from relying on negligent mistakes in an affidavit, it is a fortiori barred from relying on information known by the affiant to be intentionally false. Since in the latter situation there obviously can be no question of showing a reasonable belief in the truth of deliberate misinformation, any such statements must also be stricken prior to testing the warrant for probable cause." (*Supra*, 8 Cal.3d at p. 101, fn. 14.) Whether the use of such intentional misstatements should result in automatically quashing the warrant without regard to the effect of those misstatements on probable cause was left undecided in *Theodor.* (*Ibid.*)

In *People* v. *Barger* (1974) 40 Cal.App.3d 662 [115 Cal.Rptr. 298], it was argued that the magistrate's finding of probable cause could not be upheld since, by omission, facts relevant to the reliability of an informant were withheld from the magistrate. The court reasoned that inaccuracies in an affidavit caused by omission of material facts creates the same problem as factual inaccuracies placed in the affidavit. The court said: "The Supreme Court [in *Theodor*] pointed out that false or inaccurate information in an application for a warrant adversely affects the normal inference-drawing process of the magistrate. (8 Cal.3d at p. 96.) The magistrate's inference-drawing process would also be hindered if the affiant were permitted to 'edit' his informant's allegations by omitting unfavorable facts." (*Supra*, 40 Cal.App.3d at p. 668.) Left undecided in

---

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.

*Barger* was the question whether an intentional omission of material facts should result in automatically quashing the warrant without regard to the effect of the omitted material facts on probable cause, if the affidavit were read with those facts inserted; in *Barger,* the court found the omission to be due to "negligence" of the officer rather than wilfulness.

If the omission intentionally were done to create a false image of reliability, the element of reasonable belief in the truth of the affidavit as doctored by the omission would be absent, and under the reasoning expressed in *Theodor,* as extended in *Barger,* the missing information, at least, would have to be inserted prior to testing the affidavit for probable cause.

Although this court may infer a finding by the lower court which negates any deliberate bad faith omission of material facts *with an intent to deceive* the magistrate, the same record (i.e., the transcript of testimony at the 1538.5 hearing) which supports such an inferred finding clearly shows that the material facts which were missing from the affidavit were the result of knowing, or intentional, conduct on the part of Detective Southerland.[1]

One need only to insert the missing material facts in the affidavit to illuminate the obvious fact that the inaccuracies created by Detective Southerland's omissions were due to something more censurable than mere negligence.[2] The testimony at the 1538.5 hearing compels an inferred finding that the omissions were *intentional.*

---

[1]The testimony of Detective Southerland at the 1538.5 hearing clearly shows that the omitted material facts were within his knowledge, and he gives no reasonable explanation for leaving them out.

[2]The writer of this opinion has attempted to reproduce the detective's affidavit in support of the search warrant, *with the missing information* placed in it. Such operation produces an affidavit which would contain the following information (facts omitted from the original affidavit but within the detective's knowledge according to his testimony at the 1538.5 hearing, are underscored):

1. A. Arceo, owner of a Gibson guitar, reported on June 16, 1975, to the Merced Police Department that said guitar and the guitar case had been stolen in a burglary of his residence on June 14, 1975.
2. On June 18, 1975, affiant (Detective Southerland) was informed that the "confidential" informant in this case had offered to return the guitar to Arceo if the latter paid the informant $10.
3. Because of this information affiant suspected the informant of the burglary and interrogated him about the $10 offer.
4. Informant stated that he has observed the guitar in the possession of Arceo in the

*Theodor* indicates that the problem of inaccuracies creates the same result, however caused: "Regardless of whether misstatements are intentionally false or the product of reasonable or unreasonable cerebration, their ineluctable result is an adverse effect upon the normal inference-drawing process of the magistrate." (*Supra,* 8 Cal.3d at p. 96.) The same rationale would apply to inaccuracies created by omission. (*People* v. *Barger, supra,* 40 Cal.App.3d 662, 668-669.)

That an unintentional error can be deemed "correctible" in the manner above indicated now is established law which is grounded upon the statement in *Theodor* that: "There is no reason to hold an officer to a standard of absolute accuracy in those instances in which the inference-drawing power is reserved for the magistrate who is to issue a warrant, when the officer is only required to reach a reasonable factual deduction

---

past and that he is familiar with the guitar and the fact it belongs to Arceo.

5. Informant stated that he merely had told Arceo that "he thought he could get the guitar back for about $10 if he could find it."

6. Informant stated that he had seen the guitar in the residence of Karl Morris (petitioner) in the last three days.

7. On June 18, 1975, informant produced the guitar case for affiant and stated to affiant that he had received it from Karl Morris in exchange for some kind of a stereo tape or stereo tape deck.

8. On the basis of the foregoing information, affiant, on June 18, 1975, accused the informant of committing the burglary and affiant denied doing so.

9. Affiant did not personally know the informer prior to this transaction but on the basis of general knowledge knew him to be on the "fringes of crime," although affiant had no knowledge of any prior criminal convictions against informant.

10. On June 18, 1975, affiant indicated to informant that informant might be prosecuted for the Arceo burglary.

11. Because of the foregoing facts, affiant did not know on June 18, 1975, whether informant's statement as to the location of the guitar was reliable.

12. In order to make a test of his reliability affiant, after informant knew he was a suspect in the burglary, asked informant if he knew where he could make a "buy" of marijuana, and informant then stated that he did know and would make a buy for the police.

13. On the evening of June 18, 1975, informant made a controlled buy of a "lid" of marijuana for affiant and upon his return with the purchased marijuana informed the affiant that the subject he had bought it from had 1,300 lids of marijuana in his automobile.

14. That informant further offered to assist affiant in getting the guitar back and stated that he did not want to go to jail for something he didn't do and that he knew where the guitar was and could get it back.

15. Because informant had implicated himself to the extent of revealing his own possession of the guitar case and knowledge of the location of the guitar in the residence of K. Morris, where informant had admittedly visited and seen it, and because informant carried out the drug "buy" without any deceptive practices against the police, affiant believes the informant in this case to be reliable.

(NOTE: As to other necessary details, the affidavit was in standard form and is not objectionable.)

in those instances in which he makes the inferences and acts without a warrant. In both cases, the constitutional standard is one of reasonableness." (*Theodor* v. *Superior Court, supra,* 8 Cal.3d 77, 100.)

The same reasoning, however, does not permit of a conclusion that an officer should be permitted by *intentional* misstatement of facts, or *intentional* omission of material facts, to create a purported factual portrayal upon which to rest his claim of probable cause.

The evil that can accompany such performance is manifest from an examination of the affidavit in the instant case with the omitted material inserted (see fn. 2, *ante*). From such examination, it becomes immediately apparent that the magistrate was not made aware of many, very material facts relating to the question of the reliability of the informant: for example, that the informant had lied to the detective about the $10 offer to the owner of the guitar and so rephrased it as to attempt to exculpate himself; that the informant himself was suspected of and accused by the detective of participating in the burglary but had denied it; that the informant only had agreed to make the marijuana buy when he was asked to do so *after* he had been implicated in the burglary; and that there had been no *past* experience with the informant to test his reliability.

The foregoing data immediately raises a question as to the informant's reliability and as to the reasonableness of the detective's belief in his reliability, which the magistrate was deprived of evaluating.

While there may be merit in the contention that the exclusionary rule should not be extended beyond the limits to which it already has been extended by the appellate courts, the conduct here criticized is of the type which brought about the decision in *People* v. *Cahan* (1955) 44 Cal.2d 434 [282 P.2d 905, 50 A.L.R.2d 513], in the first instance.

An intentional usurping of the decision-making process of the court in the manner done in this case clearly illustrates the need for a plainly enunciated rule that such conduct will invalidate a search warrant without regard to the effect of the omissions on probable cause.

I concur that the peremptory writ of mandate should issue directing respondent court to suppress the evidence obtained in the execution of the search warrant in question, for the reasons enunciated in Justice Gargano's opinion.

**BROWN (G. A.), P. J.**—I dissent.

First, I disagree that as a matter of law the record herein compels a finding by this court that the omission of the information from the affidavit was done intentionally and deliberately for the purpose of withholding data from and deceiving the magistrate. The petitioner makes no such contention.[1]

The thrust of petitioner's argument is that where information is withheld from the affidavit, whether intended or negligent, the situation is different from that where information is intentionally or carelessly included in the affidavit in that in the former case such excluded information, if it is material to probable cause, should result in automatically quashing the affidavit. Petitioner does not attempt to make a clear distinction between an intended and a careless omission but argues merely that in either case the affidavit is "constitutionally defective."

By denying the motion to suppress, the trial court inferentially found against petitioner on this factual issue. We are, of course, bound by the factual determinations of the trial court, and we must infer findings in favor of the trial court's determination in support of the order, rather than seek a basis for upsetting it. (*People* v. *Superior Court (Keithley)* (1975) 13 Cal.3d 406, 410 [118 Cal.Rptr. 617, 530 P.2d 585]; *People* v. *Superior Court (Peck)* (1974) 10 Cal.3d 645, 649 [111 Cal.Rptr. 565, 517 P.2d 829].)

Notwithstanding petitioner's failure to make the contention which is the basis of the majority's opinion, and despite the applicability of the substantial evidence rule to the trial court's order, the majority laces its opinion with such tendentious and argumentative conclusions as "Detective Southerland deliberately withheld pertinent factual information pertaining to the informant's reliability." "Detective Southerland knew that his informant was totally unreliable." "It was for this very reason

---

[1] The most the petitioner has said is: "In the present case, it must be said that Officer Southerland intentionally prepared an affidavit which omitted information of which he had knowledge. (The evidence does not show that the officer realized that his omission deceived the court, nor does it show the extent of his experience in preparing such affidavits.)" Obviously, he intentionally prepared the affidavit which omitted information. However, this is not the equivalent of intentionally and deliberately omitting the information to deceive the magistrate. By petitioner's caveat in the parentheses, he has disavowed any knowledge of whether the omission was intended or was innocent or careless.

that Southerland asked the suspect if he knew where to obtain some marijuana and then proceeded to create an aura of reliability by arranging a controlled buy." "Yet the detective deliberately omitted all of these pertinent facts from his affidavit. Instead, he worded the affidavit in the manner to suggest to the unsuspecting reader that the informant was reliable because he provided information leading to a controlled buy of marijuana *before* he told the detective that he had seen the stolen guitar in petitioner's house. Clearly, the conduct of the detective transcended negligence." "Here the record leads, inescapably, to the conclusion that Detective Southerland not only concealed his own distrust of the informant and the information upon which the distrust was grounded but that he deliberately attempted to manufacture reliability through the auspices of a controlled buy and then concealed this important fact as well."

It is submitted that the above conclusional statements might be warranted if they had been made by the trial court, but the record in this case is such as to preclude this court from coming to those conclusions as a matter of law. The facts before the court are clearly susceptible of an interpretation that would impute only careless conduct to the officer.

If it was a careless omission, as the trial court impliedly found, the case could be disposed of under the persuasive precedent of *People* v. *Barger* (1974) 40 Cal.App.3d 662, 668-669 [115 Cal.Rptr. 298]. Under that case the omitted material should be placed in the affidavit and probable cause determined based on the included material, thus disposing of the case upon precedent without *reaching for* the issue of intentional and deliberate omission. An appellate court should decide a case upon grounds as narrow as possible and not reach out for bases not necessary to the disposition or which have not been fully explored by the parties.

If the omitted information is included, it does not as a matter of law render the informant unreliable. This necessarily follows for the reasons stated by the Attorney General.

Secondly, assuming I am in error in my conclusion that this omission was not intentional and deliberate as a matter of law, I would nonetheless affirm the trial court.

In *Theodor* v. *Superior Court* (1972) 8 Cal.3d 77, 96 [104 Cal.Rptr. 226, 501 P.2d 234], the court said: "However, if a magistrate is presented with false or inaccurate information in an application for a warrant, the

interences he draws from such information are not based on reality but on the fantasies of the misinformed or misinforming affiant. *Regardless of whether misstatements are intentionally false or the product of reasonable or unreasonable cerebration, their ineluctable result is an adverse effect upon the normal inference-drawing process of the magistrate."* (Italics added.)

The *Theodor* case dealt with inaccurate included information. *People v. Barger, supra,* 40 Cal.App.3d at pages 668-669, extended the same philosophy to excluded information. The majority herein approves *Barger* and concedes that had the information been carelessly omitted, the facts should be added to the affidavit and probable cause tested in the light of the additional information.

From these precepts, it must be apparent that there is not, and indeed the petitioner does not contend that there is, one whit of difference in the effect on the magistrate's inference-drawing process whether the omission is in good faith, negligent or intended. In each case, the magistrate does not have the information which may be pertinent to determining the issue of probable cause.

It is also inescapable that this defect in the inference-drawing process can be cured by adding the excluded information whether the omission is in good faith, negligent or intentional. By adding the excluded information and testing probable cause in the light of the additional information the processes of justice, the defendant, the victim and the public have in each instance been deprived of nothing. On the other hand, if the warrant is automatically quashed the defendant will, in most cases, go free, and society is the loser.

It follows that the only justification for automatically quashing the warrant is reliance upon the necessity of (1) allegedly preventing interference with the "integrity of the judicial system" and (2) punishing the officer.

The former, largely meaningless, all inclusive generality is usually relied upon to justify a conclusion where there is no readily recognizable, more specific rationale upon which to base a result. So far as the term may be intended to relate to the regard and respect of the public and the criminal defendant for the judicial system, experience with the exclusionary rule demonstrates the opposite.

That rule has resulted in impracticable and technical hair-splitting analyses (such as that undertaken in this case) equivalent in many respects to determining the solution to that classical conundrum of how many angels can dance on the head of a pin. But does the exclusion of the evidence cause such punishment to the officer as to have a deterrent effect upon the officer's future misconduct? While to my knowledge there are no definitive studies on the subject, it is common knowledge that the reaction of the officer and the public generally is that the officer did his job in catching the suspect and providing the evidence to convict but the (expletive) court let him go. The officer is commended—the court is condemned. The public is appalled and the victim is shocked. As a consequence, the deterrent effect of rendering the evidence inadmissible has not worked out in practice and has turned out to be a myth, largely because the sanction imposed does not reach the heart of the problem. And until some criminal and/or civil penalty is brought directly to bear upon the officer and the public entity for which he is employed, the deterrent effect will continue to be minimal—certainly too minuscule to justify the price the public pays in return.

The realistic, visible and practical result has been to clog our court calendars in endless and confused debate, invoke the derision of criminals who have "beat the rap" in the face of perfectly competent suppressed evidence and to cause the citizenry to have grave concern for the "integrity of the judicial process" and to lose respect for a system whose rules are apparently designed to let criminals go free at the expense of the innocent victim and the public. There are far better and more effective ways to deter illegal conduct by officers, such as a statutory suit for damages against the officer and the public entity for which he works. One such program is explicated in the cogent and forceful statements of Mr. Chief Justice Burger in his dissent in *Bivens* v. *Six Unknown Fed. Narcotics Agents* (1971) 403 U.S. 388, 412-428 [29 L.Ed.2d 619, 636-645, 91 S.Ct. 1999, 2012-2020].

While the exclusionary rule is still with us, and as an intermediate appellate court we are bound by its tenets, I do not think it should be extended beyond the limits to which it has already been extended by higher courts. As Professor Anthony Amsterdam, who is no enemy of the exclusionary rule, has noted: "As it serves this function, the rule is a needed, but grudgingly taken medicament; no more should be swallowed than is needed to combat the disease. Granted that so many criminals must go free as will deter the constables from blundering, pursuance of this policy of liberation beyond the confines of necessity

inflicts gratuitous harm on the public interest . . . ." (Amsterdam, *Search, Seizure, and Section 2255: A Comment* (1964) 112 U.Pa.L.Rev. 378, 389; fn. omitted.) (See also Kaplan, *The Limits of the Exclusionary Rule* (1974) 26 Stan.L.Rev. 1027.)

The Supreme Court has already opened the way to a restriction of the exclusionary rule. *United States* v. *Calandra* (1974) 414 U.S. 338 [38 L.Ed.2d 561, 94 S.Ct. 613] and *Michigan* v. *Tucker* (1974) 417 U.S. 433 [41 L.Ed.2d 182, 94 S.Ct. 2357] manifest not only a growing disenchantment with the rule but also the court's belief that it should not be universally applied.

I would deny the writ.

A petition for a rehearing was denied May 21, 1976. Brown (G. A.), J., did not participate therein. The petition of the real party in interest for a hearing by the Supreme Court was denied June 17, 1976.