Filed 6/16/15  Dismantides-Abel v. City of Long Beach CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| ARGY DIAMANTIDES-ABEL,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>CITY OF LONG BEACH et al.,<br><br>    Defendants and Respondents. | B245247<br><br>(Los Angeles County<br>Super. Ct. No. NC05576) |

APPEAL from an order and judgment of the Superior Court of Los Angeles County, Michael P. Vicencia, Judge.  Dismissed in part; affirmed in part.

Argy Diamantides-Abel, in pro. per., for Plaintiff and Appellant.

Charles Parkin, City Attorney, and Howard D. Russell, Deputy City Attorney, for Defendants and Respondents City of Long Beach, David Demasi, and Dave Fritz.

_____

Plaintiff Argy Diamantides-Abel sued defendants City of Long Beach (City), David Demasi, and Dave Fritz for false arrest, violation of civil rights, and negligence. Plaintiff also sued defendant Nicholas Diamantides for slander and defamation.

At the close of plaintiff's case in chief, the trial court granted defendants' respective motions for nonsuit. This appeal followed. For the reasons discussed below, the appeal is dismissed as to Nicholas Diamantides; the judgment is affirmed as to the City, Demasi, and Fritz.

## FACTUAL AND PROCEDURAL BACKGROUND

Argy Diamantides-Abel (Argy), Nicholas Diamantides (Nicholas), and Linda Diamantides (Linda) are the children of the late Vasiliki Diamantides (Bessie). Demasi and Fritz are officers with the Long Beach Police Department (LBPD).

In 2006, Nicholas moved in with Bessie at her home in Long Beach. At the time, Bessie was over 90 years old. Bessie had joint bank accounts with Argy, who had the power of attorney over Bessie's health care.

In 2009, Bessie rearranged her affairs by signing notarized documents that revoked Argy's power of attorney and granted Nicholas the power of attorney over her property and health care. Bessie closed her joint accounts with Argy, and opened new joint accounts with Linda.

Argy accused Nicholas of misusing his power of attorney to steal Bessie's assets. Argy had the bank place a hold on Bessie's accounts. She also tried to file a crime report against Nicholas. However, when Argy showed Officer Eduardo Saldana the disputed power of attorney documents, he concluded there was insufficient evidence of a crime and filed a report for informational purposes only.

While Bessie was hospitalized during this period, Argy told a hospital social worker about the alleged theft of Bessie's assets by Nicholas. The social worker faxed documents to the LBPD regarding Argy's allegations against Nicholas.

2

Also during this period, Argy went to Bessie's home and removed a plastic storage bin with prescription medications, a blood pressure monitor, a sound amplifying telephone, and silverware. Bessie's neighbor, Mary Drake, told Nicholas that she had seen Argy removing items from Bessie's house. Nicholas filed a police report accusing Argy of theft. Officer Saldana left Argy a voicemail message informing her of Nicholas's allegations and asking that she return his call. Although Argy received his message, she did not return the call.

Demasi and Fritz went to Argy's house and knocked on the door. After receiving no response, they left a note on the door asking her to call. They did not hear from her, but obtained information from other sources that led them to conclude there was sufficient evidence to seek a search warrant. They filed an affidavit of probable cause that included the following information: Nicholas had the power of attorney over Bessie's affairs; there was an ongoing dispute between Nicholas and Argy over the power of attorney; Argy had a key to Bessie's home, but did not have permission to take any property; a neighbor (Drake) saw Argy removing a plastic storage container from Bessie's house and placing it inside a car; Nicholas reported the theft of a plastic storage container containing Bessie's medications (worth about $500), a hearing-impaired phone, and blood pressure monitor; Drake identified a photograph of Argy, and confirmed that she had seen Argy taking a white plastic storage container from the house and placing it inside a car; and Fritz and Demasi knocked on Argy's door, but no one answered.

The magistrate issued the search warrant, which police executed two days later. In the interim, Argy delivered a packet of materials to LBPD's downtown headquarters. The packet, which contained information concerning Nicholas's alleged fraudulent activities, was addressed to Saldana and two other officers. The packet was not addressed to Demasi and Fritz, who were assigned to an outlying substation, and they executed the search warrant without knowledge of the packet's existence. During the search, the missing items were found at Argy's home.

Argy was arrested for violations of Penal Code section 368, subdivision (d) (theft from an elderly person) and 459 (entry into a house with intent to commit larceny or a felony).[1] After being advised of her rights, Argy admitted she took the items because she felt it would be in Bessie's best interests to live with her after being discharged from the hospital. Argy conceded that she "could have handled it a little differently."

Argy was released after posting bail. When Fritz presented the allegations against Argy to the district attorney's office, the filing deputy declined to file charges against her. Similarly, the investigations of Argy's allegations against Nicholas were closed without any findings of fraud or elder abuse. The bank released its hold on Bessie's accounts.

Argy filed the present action against Nicholas for slander and defamation, and against the City, Demasi, and Fritz for false imprisonment, violation of civil rights, and negligence. Argy argued to the trial court that her arrest was unlawful because the search warrant affidavit was invalid due to the omission of material information that would have shown she was trying to protect her mother and had no intent to steal anything. Charles Hazelton, a former police officer and prosecutor, testified that he would not have pursued criminal charges against her for acting in her mother's best interests. Hazelton explained that a search warrant, although facially valid, may be invalid if the affidavit of probable cause failed to include material information.

At the close of Argy's case in chief, respondents moved for nonsuit. Respondents denied that the affidavit of probable cause was misleading, or that the magistrate was unaware of all material facts. They pointed out that the magistrate was aware that the siblings were involved in a dispute over the power of attorney, that Argy had a key to Bessie's house but did not have permission to remove her property, and that the neighbor who witnessed the taking had been interviewed by police. Respondents argued that

---

[1] After the arrest, Officer R. Montell prepared a declaration of probable cause, which stated in relevant part: "The defendant was arrested after she was identified as the person who misappropriated money from her elder[ly] dependent mother. The defendant also entered her mother's residence without permission and took property."

4

Argy's fraud allegations against Nicholas were not material because their disclosure would not have altered the magistrate's finding of probable cause.

In opposition, Argy argued the affidavit of probable cause was invalid because it failed to mention her fraud allegations against Nicholas. She argued that if the magistrate had been informed of her fraud allegations against Nicholas, the search warrant would not have been issued, because the magistrate would have known that she did not harbor an intent to steal, but was simply trying to protect her mother's interests.

The trial court was not persuaded that the search warrant affidavit was invalid. After noting that the omitted information could "cut both ways," the court found the omitted information was not material to the probable cause determination and, therefore, the affidavit and warrant were valid. The trial court stated that "viewing the evidence in the light most favorable to the plaintiff, there was still clear probable cause to support the warrant."

As to the negligence claim, the trial court concluded that it must fail given the absence of a special duty of care owed by respondents to Argy.[2] As to the defamation claim, the trial court found that Nicholas's disputed statements were privileged under Civil Code section 47, subdivision (b). After granting the motions for nonsuit, the trial court dismissed the jury.

Argy filed a premature notice of appeal before a final judgment was entered. Upon being advised that the appeal was premature for lack of a final judgment (see *Powell v. County of Orange* (2011) 197 Cal.App.4th 1573 [an unsigned order granting a motion for nonsuit is not an appealable order]), counsel obtained a recorded judgment of nonsuit in favor of the City, Fritz, and Demasi (collectively, respondents). After being provided with a conformed copy of the judgment, we deemed the premature notice of appeal to be taken from the judgment in favor of respondents. However, because no

---

[2] During trial, Argy abandoned the claim that when executing the search warrant, the officers did not knock and announce their presence.

judgment was entered in favor of Nicholas, we dismiss that portion of the appeal for lack of an appealable order.

## DISCUSSION

Argy seeks reversal of the judgment of nonsuit in favor of respondents. She contends the search warrant is invalid due to the omission of material information from the affidavit of probable cause. We disagree.

### A. Motions for Nonsuit

"'A defendant is entitled to a nonsuit if the trial court determines that, as a matter of law, the evidence presented by plaintiff is insufficient to permit a jury to find in his favor.' (*Nally v. Grace Community Church* (1988) 47 Cal.3d 278, 291.) In determining the sufficiency of the evidence, the trial court must not weigh the evidence or consider the credibility of the witnesses. Instead, it must interpret all of the evidence most favorably to the plaintiff's case and most strongly against the defendant, and must resolve all presumptions, inferences, conflicts, and doubts in favor of the plaintiff. If the plaintiff's claim is not supported by substantial evidence, then the defendant is entitled to a judgment as a matter of law, justifying the nonsuit. (*Ibid*.) [¶] Since motions for nonsuit raise issues of law (*Loral Corp. v. Moyes* (1985) 174 Cal.App.3d 268, 272), we review the rulings on those motions de novo, employing the same standard which governs the trial court (*Nally v. Grace Community Church*, *supra*, 47 Cal.3d at p. 291)." (*Saunders v. Taylor* (1996) 42 Cal.App.4th 1538, 1541–1542.)

### B. Affidavits of Probable Cause

"In California a facially valid search warrant affidavit may be attacked on grounds that it contains deliberate or negligent misstatements. The rule arises both from our Constitution's guarantee against unreasonable search and seizure and from statutes regarding suppression of illegally obtained evidence. (Cal. Const., art. 1, § 13; Pen. Code, §§ 1538.5–1540; *People v. Cook* (1978) 22 Cal.3d 67, 74 [*Cook*]; *Theodor v. Superior Court* (1972) 8 Cal.3d 77, 100–101 [*Theodor*].) It rests upon the constitutional

6

preference for warrants, which presupposes that probable cause determinations will be made independently by neutral, fully informed judicial officers rather than by the police. A misinforming affidavit hinders the magistrate's inference-drawing powers and increases the likelihood that privacy will be invaded without probable cause. (*Cook*, *supra*, 22 Cal.3d at pp. 81–82; see *Aguilar v. Texas* (1964) 378 U.S. 108, 110–111; *Johnson v. United States* (1948) 333 U.S. 10, 13–14; *Theodor*, *supra*, 8 Cal.3d at pp. 90–91, fn. 6, 96.)" (*People v. Kurland* (1980) 28 Cal.3d 376, 383, fn. omitted (*Kurland*).)

Like misstatements, the omission of material facts also may be problematic, as where "an affidavit simply fails 'to *include* information which might otherwise negate a finding of probable cause.' ([*Theodor*, *supra*,] 8 Cal.3d at p. 96, fn. 11; see also *Cook*, *supra*, 22 Cal.3d at p. 92.)" (*Kurland*, *supra*, 28 Cal.3d at p. 384.) "[A]n affidavit may be insufficient when it omits facts adverse to the warrant application. (*People v. Neusom* (1977) 76 Cal.App.3d 534, 538–539; *Morris v. Superior Court* (1976) 57 Cal.App.3d 521, 526; *People v. Barger* (1974) 40 Cal.App.3d 662, 668–669; see *People v. Webb* (1973) 36 Cal.App.3d 460, 470–471.)" (*Ibid.*)

In *Kurland*, the Supreme Court stated that "[a]n affidavit may be as inaccurate when it omits facts as when it misstates them. The crucial, inference-drawing powers of the magistrate may be equally hindered in either case, with identical consequences [that] innocent privacy [will be invaded]. (See Moylan, *Hearsay and Probable Cause: An Aguilar and Spinelli Primer* (1974) 25 Mercer L.Rev. 741, 749.) We therefore conclude that the California Constitution and statutes permit defendant to attack a facially sufficient warrant affidavit on grounds that, though it contains no affirmative falsehoods, it is incomplete." (*Kurland*, *supra*, 28 Cal.3d at pp. 383–384.)

C.      *The Omitted Information*

Argy contends the following information was omitted from the affidavit of probable cause:

*911 Call.*  In March 2009, Argy and Nicholas had an argument at Bessie's home. Argy called 911 during the argument.  LBPD officers responded to the call, but Argy declined to press charges.

*Crime Report.*  In June 2009, Argy told Officer Saldana that Nicholas had fraudulently closed Bessie's bank accounts containing $55,000.  She told Saldana that she was afraid that Nicholas and Linda would steal Bessie's money, that Nicholas was isolating and overmedicating Bessie, that Nicholas had discarded Bessie's clothing, and that a sterling silver tea set was missing.

*APS Report.*  In July 2009, Argy informed Adult Protective Services that Nicholas was committing elder abuse against Bessie.

*Elder Abuse Report.*  In July 2009, Argy told Officer Royce Wexler that Nicholas had stolen $55,000 from Bessie's bank accounts, that Nicholas had obtained an invalid power of attorney, that Nicholas was overmedicating Bessie with Vicodin, that Nicholas was prohibiting Bessie from watching television, that Nicholas had fired Bessie's favorite caregiver, and that Nicholas was not paying Bessie's caregivers.

*FAX from Hospital.*  In July 2009, a hospital social worker faxed documents to the LBPD regarding Argy's theft allegations against Nicholas.

*Nicholas's Occupation.*  Nicholas is a "newspaper reporter who had frequent contact with Long Beach police officers."

D.      *Analysis*

In weighing the contention that the search warrant affidavit is invalid, the test is whether there is a likelihood that the omitted information "would have altered a reasonable magistrate's probable cause determination."  (*Kurland*, *supra*, 28 Cal.3d at p. 385.)  "Unlike misstatements, omissions do not always render an affidavit inaccurate. . . . [O]nly material omissions have that effect."  (*Id.* at p. 387.)  "[F]acts are 'material' and hence must be disclosed if their omission would make the affidavit *substantially misleading.*"  (*Id.* at p. 385.)

8

Here, the magistrate was informed that Nicholas had an instrument providing the power of attorney over Bessie's property, but there was a dispute about its validity. The magistrate also knew the police had interviewed an independent witness who claimed to have seen Argy removing items from Bessie's house. In light of the information provided to the magistrate, it is unlikely the disclosure of the omitted information would have altered the probable cause determination. As the trial court pointed out, the omitted information cuts both ways, because even if Nicholas were guilty of fraud, his misdeeds would not entitle Argy to take Bessie's property without permission. Because it is unlikely that the disclosure of the omitted information would have altered the probable cause determination, we find no basis to invalidate the warrant.

E.    *Negligence*

Argy also seeks to reverse the nonsuit on her negligence claim. She argues that due to negligent training, Officer Saldana was not familiar "with what constituted elder abuse" and did not conduct a proper investigation. She also contends that her packet of information was not properly distributed to the intended recipients, Saldana and two other officers.

Because police officers owe no special duty of care with regard to private individuals such as Argy, the negligence claim necessarily must fail. The duty owed by police officers "is a general duty owed to the public as a whole. [Citation.] The intended beneficiaries of any investigation that is undertaken are the People as prosecutors in criminal cases, not private individuals. [Citation.]" (*Von Batsch v. American Dist. Telegraph Co.* (1985) 175 Cal.App.3d 1111, 1121–1122.) "[A]bsent a special relationship creating a special duty, the victim of a crime that the police might have prevented cannot recover. [Citations.]" (*Id.* at p. 1122.) "One cannot recover for 'injuries caused by the failure of police personnel to respond to requests for assistance, the failure to investigate properly, or the failure to investigate at all, where the police had not induced reliance on a promise, express or implied, that they would provide protection.' [Citations.]" (*Id.* at pp. 1122–1123, italics omitted.)

9

**DISPOSITION**

The appeal is dismissed with regard to Nicholas Diamantides for lack of an appealable order. The judgment of nonsuit is affirmed in favor of respondents City, Demasi, and Fritz, who are awarded their costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

                                                            EPSTEIN, P. J.

We concur:



WILLHITE, J.



COLLINS, J.



10