[Crim. No. 19815. First Dist., Div. One. May 15, 1980.]

THE PEOPLE, Plaintiff and Respondent, v.
STANLEY W. CAFFOTT, Defendant and Appellant.

**COUNSEL**

Ronald W. Rose for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, Robert R. Granucci and Martin S. Kaye, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**THE COURT.\***—Stanley Walker Caffott appeals from a judgment of conviction, entered upon his negotiated plea of guilty, of possession of heroin for sale (Health & Saf. Code, § 11351) and possession of concentrated cannabis (Health & Saf. Code, § 11357, subd. (a)). He seeks further review of the validity of the seizure, upon execution of a search warrant, of the contraband subsequently described in the charges against him (cf. Pen. Code, § 1538.5, subd. (m)). He contends that the affidavit upon which the search warrant was issued improperly usurped the inference-drawing function of the magistrate. We affirm.

The affidavit, sworn to by a narcotics officer, recited that an untested informant named Lydia had told the affiant that she had purchased heroin from appellant on several occasions and had described for affiant the house where appellant lived and the van he used. The affidavit also stated the affiant's qualifications as a narcotics officer and his opinion, corroborated by another officer, that Lydia was a heroin user and that she "is and was a current heroin user" when she was arrested for being under the influence of heroin on the day after her last reported purchase of heroin from appellant. The affidavit contained further verification of the location and juxtaposition of the house and the van, and reported that appellant had previously been arrested for possession of a controlled substance (Health & Saf. Code, § 11350) and was on probation for false representation to obtain prescription drugs (Bus. & Prof. Code, § 4390.5).

The affidavit also stated that four days after Lydia's last reported purchase of heroin from appellant "your affiant monitored a phone call to the above number by the informant and overheard the informant talk to a male person. The conversation between the informant and the male person consisted of the informant asking if the male person had anything and a reply in the affirmative by the male person. The conversation was also heard to contain an arrangement between the informant and the male person on the telephone for the informant to come to the residence for the arrangements to purchase heroin." "The above number" was ostensibly appellant's; the implication was that the "male person" was appellant.

---

\*Before Elkington, Acting P. J., Newsom, J., and Grodin, J.

It is this summary of the monitored telephone conversation which appellant attacks on appeal. At preliminary examination, and again at a suppression hearing in the trial court, appellant demonstrated that the telephone conversation had been recorded and that as recorded the conversation did not contain in literal text the statements and arrangements attributed to it by the summary.[1] Specifically, although the conversation as recorded clearly contained an arrangement between Lydia and the male person to meet at the male person's residence neither the word "heroin" nor any of its common street synonyms was used, and the summary's statement that Lydia had asked if the male person had anything and had received an affirmative reply was apparently based on an exchange in which (as recorded) Lydia said "You don't have nothing?" and the male person said "Ya." The literal text of the telephone conversation was not made available to the issuing magistrate. Appellant contends that the magistrate should have been permitted to draw his own inferences from the literal text, and that by stating his own conclusions in the form of empirical facts the affiant wrongfully usurped the inference-drawing function of the magistrate while concealing that he had done so.

---

[1] The following transcript of the recorded telephone conversation was prepared by appellant and is apparently accepted as accurate by the People:

"Operator—The time is 12:22 exactly.

"Ouimet—P.M. July 17, 78. This is Officer Ouimet making a recorded telephone call. The number to be called is 358-2207. The party to be asked for is Stan. Do I have your permission to make this telephone call?

"—Yes.

"Stan—Hello?

"—Hi.

"Stan—Hi.

"—What are you doing?

"Stan—Watching the news. Getting ready to split.

"—Where you going?

"Stan—Take care of business.

"—You don't have nothing?

"Stan—Ya.

"—Oh. When are you gonna come back?

"Stan—When you coming by?

"—I don't know, I'm at home. I'm at home.

"Stan—What happened to you last night?

"—Nothing. I, I went over to Kelly's.

"Stan—Ya?

"—Ya I got lost.

"Stan—Should have come by.

"—Ya I know. I should have. But anyways, so I'll be there in maybe, when are you gonna leave? Real quick?

"Stan—Uh huh.

"—How quick?

In testimony the affiant acknowledged that the telephone conversation did not contain, in so many words, the statements apparently attributed to it in the affidavit, repeatedly asserted his own good faith belief that the affidavit accurately stated the *meaning* of the telephone conversation, expressly denied that he had set about to mislead the magistrate, acknowledged that in deriving the meaning of the telephone conversation he had relied on his discussion with Lydia as well as on voice inflections in the conversation, and acknowledged that he had prepared the affidavit with the assistance of a deputy district attorney who also listened to the tape and who concurred with the affiant's interpretation of the conversation.

After hearing the tape the trial court concluded that the affiant's summary of the telephone conversation was, in context, "a reasonable misstatement" and, alternatively, that "even assuming that the statement was negligently made and should be excised from the affidavit,

---

"Stan—Right away.
"—Like right now, hu. Is that what you're saying?
"Stan—Ya.
"—Ok, um, why don't you just wait just a little bit?
"Stan—Um.
"—No.
"Stan—Ya alright.
"—You will? You will?
"Stan—Ya.
"—Ok it'll take me a little while to get down there you know?
"Stan—Ya I know.
"—Ok and then, I'll just run in and run out real quick, like I, ok?
"Stan—No.
"—No?
"Stan—No. That ain't cool.
"—Oh its not?
"Stan—uh huh.
"—Ok then what?
"Stan—Just, you know take your time.
"—Oh drive slow, is that what you mean?
"Stan—No. When you're here.
"—Oh. Ok.
"Stan—Or I'll just talk to you when you get here.
"—Oh. ok.
"Stan—Cause I'm gonna split right now then.
"—And then you'll be back by the time I
"Stan—Ya.
"—Oh ok.
"Stan—Alright.
"—Ok bye.
"Stan—bye.
"Operator—The time is 12:54 exactly."

the remaining accurate information contained in the affidavit is sufficient to establish probable cause," and denied appellant's motion to suppress. Appellant argues that the trial court should have suppressed the evidence. Our review of his contention is undertaken in light of well-established principles:

■ """A proceeding under section 1538.5 to suppress evidence is one in which a full hearing is held on the issues before the superior court *sitting as a finder of fact*." (*People* v. *Heard* (1968) 266 Cal.App.2d 747, 749 [72 Cal.Rptr. 374].)' (*People* v. *West* (1970) 3 Cal.3d 595, 602 [91 Cal.Rptr. 385, 477 P.2d 409].) (Italics added.) In such a proceeding the power to judge the credibility of the witnesses, resolve any conflicts in the testimony, weigh the evidence and draw factual inferences, is vested in the trial court. On appeal all presumptions favor the exercise of that power, and the trial court's findings on such matters, whether express or implied, must be upheld if they are supported by substantial evidence. ■ The trial court also has the duty to decide whether, on the facts found, the search was unreasonable within the meaning of the Constitution. Although that issue is a question of law, the trial court's conclusion on the point should not lightly be challenged by appeal or by petition for extraordinary writ. Of course, if such review is nevertheless sought, it becomes the ultimate responsibility of the appellate court to measure the facts, as found by the trier, against the constitutional standard of reasonableness." (*People* v. *Lawler* (1973) 9 Cal.3d 156, 160 [107 Cal.Rptr. 13, 507 P.2d 621], fn. omitted.)

■ It is axiomatic that a search warrant affidavit should leave any significant inference-drawing to the issuing magistrate. (*People* v. *Superior Court* (*McCaffery*) (1979) 94 Cal.App.3d 367, 369-370 [156 Cal.Rptr. 416]; *Rodriguez* v. *Superior Court* (1978) 87 Cal.App.3d 822, 830-831 [141 Cal.Rptr. 233].) At the least the magistrate must be afforded an opportunity to test for himself any significant inference drawn by the affiant; for this reason, "in preparing affidavits for search warrants the affiant must—under the compulsion of the Fourth Amendment—take particular care to state explicitly when he or she is drawing conclusions rather than reciting facts." (*People* v. *Superior Court* (*McCaffery*), *supra*, 94 Cal.App.3d at pp. 369-370.) The facts which underlie any such significant inference should be disclosed to the magistrate. In most instances practicality will dictate that the underlying facts be summarized, but in this case the facts were embodied in a short tape recording which easily could have been and therefore should

have been delivered to the magistrate. The question we must answer is whether the affiant's failure to identify his inferences as such and to deliver the tape recording to the magistrate mandated as a matter of law that the evidence be suppressed.

Surely an affiant's failure to identify and to support an inference should not invariably require suppression. Any effective factual narrative will inevitably contain a measurable number of conclusions based on what might be called "hidden inference": It would be impractical to require that an affiant pause to label and to state the predicate for every conclusion in a search warrant affidavit no matter how insignificant the encroachment upon the magistrate's function: *Rodriguez* suggests, for example, that an affiant might permissibly replace "the word 'stuff' with 'heroin' in quoting a conversation" without being required to point out that he has made the change. (Cf. *Rodriguez v. Superior Court, supra*, 87 Cal.App.3d at p. 831, fn. 3.) What will be required, whenever a defendant asserts that his Fourth Amendment rights have been eroded by the use of hidden inferences in a search warrant affidavit, will be "a line between permissible police interpretation and usurpation of the magistrate's function,..." (*Ibid.*) The inquiry will be essentially factual, and thus should be entrusted in the first instance to the trial court acting as a trier of fact at the hearing upon the defendant's motion to suppress. Analysis should proceed along the following lines:

*First*, if the conclusion itself is shown to be false, the trial court should simply treat the conclusion as a factual misstatement under the rules developed in *Theodor v. Superior Court* (1972) 8 Cal.3d 77, 100-101 [104 Cal.Rptr. 226, 501 P.2d 234], and in *People v. Cook* (1978) 22 Cal.3d 67 [148 Cal.Rptr. 605, 583 P.2d 130]. This is essentially what happened in *People v. Superior Court* (*McCaffery*), *supra*, where the critical question was whether a recording of a conversation contained objective manifestations of an agreement and the affidavit, without transcribing the recording, concluded that the conversation did not show the agreement. The trial court found that the recording was, in fact, "almost unintelligible" and that the hidden inference underlying the affiant's conclusion was "completely unreasonable." Accordingly the trial court excised the conclusion and ultimately suppressed the evidence; the Court of Appeal, expressing deference to the rule that "all presumptions favor" the trial court's exercise of its fact-finding power at a suppression hearing, agreed. (94 Cal.App.3d at pp. 372-375.) In this action, on the other hand, there was no showing whatsoever, and

appellant does not appear to contend, that the affiant's interpretation of the telephone conversation was false. The affiant's summary was thus a "misstatement" only in that it presented conclusions in the form of empirical facts, and appellant's argument is simply that the magistrate should have been permitted to draw the inferences for himself.

*Second*, the trial court should determine whether the hidden inference was so significant as to cross the line between permissible interpretation and usurpation. In *Morris* v. *Superior Court* (1976) 57 Cal.App.3d 521 [129 Cal.Rptr. 238], the Court of Appeal stated that a fact *omitted* from a search warrant affidavit may be deemed to have been material and relevant "to the extent that it can be said, fairly, that [by virtue of the omission] the magistrate's inference-drawing process was interfered with, substantially." (57 Cal.App.3d at p. 524.) The integrity of the magistrate's function is exactly what concerns us here; the *Morris* concept could be adapted for this purpose: A hidden inference should be deemed significant if it can be fairly concluded that it had a substantial bearing on the magistrate's determination of probable cause in each of two respects:

(1) *Relevance*: The more directly relevant the inference is to the magistrate's inquiry, the more substantial its bearing and the more significant it will be. A hidden inference might be relevant to the ultimate conclusion as to whether there is probable cause (cf. *Rodriguez* v. *Superior Court, supra*) or to a technical requirement of a valid affidavit (cf. *People* v. *Superior Court* (*McCaffery*), *supra*). In this action the hidden inference was unquestionably directly relevant in both senses: It suggested that appellant had heroin on hand, and it tended to corroborate the hearsay statements of the untested informant.

(2) *Complexity*: The more complex and attenuated the logical process by which a relevant conclusion is reached, the more important it is that the magistrate receive an opportunity to test the inference for validity as part of his neutral and detached function. Conversely, an inference so straightforward, and so patently within the affiant's area of expertise, as to be a matter of "routine interpretation" for the affiant is probably not so significant as to require the magistrate's review even though the conclusion thus reached is highly relevant. *Rodriguez'* example is germane: A narcotics officer may routinely infer that "stuff" means "heroin" (87 Cal.App.3d at p. 831, fn. 3), even though the ultimate conclusion that heroin is involved will usually be most relevant.

In this action the trial court's primary finding was that the "misstatement" represented by the conclusionary summary of the telephone conversation was "reasonable," by which . the trial court apparently meant either that it was reasonable for the affiant to present his conclusions with respect to the telephone conversation as though they were the words used over the telephone, or that the affiant's interpretation of the telephone conversation was reasonable. In either event the trial court implicitly found that the hidden inferences were so straightforward and routine for the affiant as to come within the realm of reasonable interpretation.

We find substantial evidence in the record to support the trial court's determination. The affiant had established at least minimal expertise in narcotics enforcement work; he had interviewed Lydia and had satisfied himself empirically and from reliable police sources that she was a heroin user who had been found under the influence of heroin within the past four days and within a day after her last reported purchase of heroin from appellant; he had presumptive familiarity with the diction of participants in narcotics transactions. He was entitled to take these circumstances and elements of his experience into account as he monitored and sought to extract meaning from the telephone conversation. The conversation was short: It plainly indicated that Lydia and appellant were arranging to meet at appellant's residence. The affiant had been told that their common bond was heroin. The exchange—"You don't have nothing?" "Ya."—is susceptible, in full context, of interpretation as an affirmation that appellant had something, although here affiant's experience with the relevant subculture may have helped him with the interpretation. In a way the affiant was translating an unfamiliar pattern of speech. Was he required to turn the text over to the magistrate untranslated? A sensible course would have been to furnish the text *and* the translation, but the trial court concluded in necessary effect that his failure to do so was "reasonable." The trial court's conclusion is adequately supported by the record.

It was therefore unnecessary for the trial court, and is unnecessary for us, to reach the *third* step of analysis of hidden inference cases of this kind: Briefly, if the trial court determines that the hidden inference was significant, it should next determine the animus of the affiant with respect to the inference-drawing process: Did the affiant *intend* by use of the hidden inference to deprive the magistrate of the opportunity to test the inference, or proceed with *conscious indifference* as to whether

use of the hidden inference would have that effect? Or did the affiant simply *negligently* overlook the potential usurpation which should have been apparent to him? If the trial court has found that the hidden inference was significant, it will not be apt to find that its use was a product of *reasonable inadvertence.* Having assessed the affiant's state of mind, the trial court can apply rules closely analogous to those applicable to misstatements in, and to omissions from, search warrant affidavits. On analysis a hidden inference contains elements both of misstatement—representation of a conclusion in such a form as to make it appear to be an empirical fact—and of omission—the facts from which the affiant inferred the conclusion, and in some cases the inference process itself, are not shown. If the affiant was simply negligent, then both misstatement and omission rules appropriate to negligence should be applied: The misstatement should be "excised" by labelling the inference as such, and the omitted underlying facts should be added, and the affidavit should be reassessed as thus revised. (Cf. *Theodor v. Superior Court, supra,* 8 Cal.3d at pp. 100-101; *Morris v. Superior Court, supra,* 57 Cal.App.3d at p. 526; *People v. Barger* (1974) 40 Cal.App.3d 662, 668-669 [115 Cal.Rptr.. 298]; *People v. Superior Court (McCaffery), supra,* 94 Cal.App.3d at pp. 373-374.) If the affiant acted intentionally, or with conscious indifference, then the affidavit and warrant should be invalidated and the evidence suppressed. (Cf. *People v. Cook, supra; Morris v. Superior Court, supra,* 57 Cal.App.3d at pp. 523-524; *Rodriguez v. Superior Court, supra,* 87 Cal.App.3d at p. 831.)

We have attempted to make clear that we do not condone a practice of stating any but the most mundane of conclusions in the form of empirical facts in search warrant affidavits. The affiant in this action should have furnished both his conclusions and the tape of the telephone conversation to the issuing magistrate. We hold only that on the record before us, and with due consideration to the settled principles under which we review determinations made at suppression hearings, there was substantial evidence to support this trial court's order denying appellant's motion to suppress.

The judgment is affirmed.

A petition for a rehearing was denied June 13, 1980.