[Cite as *State v. Middlebrooks*, 2019-Ohio-2149.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
SANDUSKY COUNTY

State of Ohio

    Appellee

v.

Shawn E. Middlebrooks

    Appellant

Court of Appeals No. S-18-032

Trial Court No. 18CR46

**DECISION AND JUDGMENT**

Decided:  May 31, 2019

* * * * *

Timothy F. Braun, Sandusky County Prosecuting Attorney,
Mark E. Mulligan and Kenneth C. Walz, Assistant Prosecuting
Attorneys, for appellee.

Karin L. Coble, for appellant.

* * * * *

**PIETRYKOWSKI, J.**

{¶ 1} Appellant, Shawn Middlebrooks, appeals the judgment of the Sandusky County Court of Common Pleas, following a jury trial, convicting him of one count of possession of drugs.  For the reasons that follow, we affirm.

## I. Facts and Procedural Background

{¶ 2} This case stems from an incident on September 9, 2017, wherein appellant was apprehended while fleeing from a motel room that was under surveillance by the U.S. Marshals. A subsequent search of the motel room, pursuant to a search warrant, uncovered a box containing a digital scale and 16 grams of heroin.

{¶ 3} On January 11, 2018, the Sandusky County Grand Jury indicted appellant on one count of possession of drugs in violation of R.C. 2925.11(A) and (C)(6)(d), a felony of the second degree, and one count of trafficking in drugs in violation of R.C. 2925.03(A)(2) and (C)(6)(e), a felony of the first degree.

{¶ 4} On May 16, 2018, appellant moved to suppress any evidence gathered from the motel room, arguing that the affidavit submitted to support the search warrant was deficient. The affidavit detailed that the affiant, Captain Zachary Zender of the Sandusky County Sheriff's Office, was assisting several U.S. Marshals on the morning of September 9, 2017, as they conducted surveillance on room 116 of the Great Lakes Motel. At the time, the U.S. Marshals were looking for a fugitive who was not appellant. Zender stated in the affidavit that the Great Lakes Motel is a well-known high traffic area for drug activity. While they were conducting surveillance on the room, a white pickup truck pulled into an adjacent parking lot, and a white male exited the vehicle and approached room 116. One of the Marshals relayed to Zender that the white male engaged in a hand-to-hand exchange with a black male in the doorway of room 116, and then immediately returned to his truck.

2.

{¶ 5} Believing that a drug transaction just occurred, Zender and several of the U.S. Marshals followed the white pickup truck. When the truck pulled down a lane, a stop was initiated. Zender stated that as the driver opened the door, he threw something into a weedy area on the side of the lane. As they ordered the driver out of the vehicle, a crack pipe was observed on the floorboard on the driver's side of the white truck. The driver was identified as D.A. D.A. admitted that the object he threw into the weedy area was crack cocaine that he had just purchased from a black male he believed to be named Sean Green. Zender then consulted with another drug task force officer, and came to the belief that the black male who sold the crack cocaine was appellant, Sean Middlebrooks. Zender then showed a picture of appellant to D.A., and D.A. confirmed that was the individual who sold him the drugs.

{¶ 6} At the hearing on the motion, Zender testified consistent with the information in the affidavit. Following the hearing, the trial court found that the warrant was based upon sufficient probable cause. Thus, it denied appellant's motion to suppress.

{¶ 7} The matter then continued to a jury trial. At the trial, Deputy U.S. Marshall Rod Hartzell testified that he was the person observing room 116 of the Great Lakes Motel. Hartzell was stationed away from the motel, and watched the room through a telescope. Hartzell testified that he observed D.A. arrive and enter room 116. Two minutes later, D.A. left the room. Hartzell admitted on cross-examination that he did not observe a hand-to-hand transaction between D.A. and the black male in room 116. Hartzell testified that he then relayed the information of the suspected drug activity, and

3.

he remained in his position conducting surveillance while the other U.S. Marshals pursued and stopped D.A. Once a search warrant was obtained, Hartzell joined the other U.S. Marshals in approaching room 116. Hartzell testified that once appellant saw the three cars containing U.S. Marshals enter the parking lot of the Great Lakes Motel, appellant fled on foot. Hartzell pursued appellant in his vehicle, and cut appellant off as appellant was running between houses. A second U.S. Marshal arrived on foot shortly thereafter, and apprehended appellant.

{¶ 8} The state next called Marc Thompson, a task force officer with the U.S. Marshals. Thompson testified that he was involved in the search of room 116, and that he found the box containing the heroin and digital scale. Thompson testified that the box was visibly located in an empty space in the wall underneath a window. The space was accessible from inside the room, and included a small, covered enclosure that extended slightly beyond the outside wall. On cross-examination, Thompson was not completely sure whether the structure containing the box was also accessible from outside of the room.

{¶ 9} The state also called D.A. as a witness. D.A. testified that on September 9, 2017, he contacted appellant in an effort to purchase crack cocaine. D.A. was shown a call log from appellant's cell phone, and identified his number as making an incoming call to appellant at 2:24 p.m., receiving an outgoing call from appellant at 2:33 p.m., and making another incoming call to appellant at 2:36 p.m. D.A. testified that he then went to the Great Lakes Motel, and purchased crack cocaine from appellant. According to D.A.,

4.

he did not observe any other people in the room while he was purchasing the drugs. After the purchase, D.A. drove to a different location to use the drugs, and that is when he was stopped by the U.S. Marshals. D.A. stated that as he opened the door to his truck, he threw the crack cocaine into the weeds. D.A. recounted that he was told that the officers were not really interested in him, and that they would not prosecute him for the crack pipe if he assisted them in their investigation. D.A. then identified appellant as the person who sold him the drugs.

{¶ 10} Finally, Zender testified for the state. In addition to recounting the circumstances that led him to obtain the search warrant, Zender testified that the motel room was filled with appellant's clothes and other possessions, and it looked like appellant had been in the room for "some time." Zender testified that they retrieved four cell phones from appellant—three on his person, and one in the room—one of which contained the call information from D.A. Zender also testified that $534 cash was found on appellant's person, which he stated was typical of persons who participate in the sale of narcotics.

{¶ 11} Following the presentation of evidence and closing arguments, the jury returned with a verdict of guilty on the count of possession of drugs, and not guilty on the count of trafficking in drugs. The trial court then continued the matter for sentencing.

{¶ 12} At the sentencing hearing, the trial court ordered appellant to serve the maximum prison term of eight years. The court also assessed court costs.

## II. Assignments of Error

{¶ 13} Appellant has timely appealed the July 27, 2018 judgment of the Sandusky County Court of Common Pleas memorializing his conviction and sentence, and now asserts three assignments of error for our review:

1. The trial court erred by denying the motion to suppress the fruits of the search warrant pursuant to the exclusionary rule of the Fourth Amendment to the U.S. Constitution and Article I, Section 14, of the Ohio Constitution.

2. The verdicts were not supported by sufficient evidence and fell against the manifest weight of the evidence.

3. The trial court failed to impose costs at the sentencing hearing and failed to find appellant had the ability to pay costs, rendering the imposition of costs invalid.

## III. Analysis

## A. Motion to Suppress

{¶ 14} In his first assignment of error, appellant argues that the trial court erred in denying his motion to suppress because the affidavit supporting the search warrant was defective.

{¶ 15} "In reviewing the sufficiency of probable cause in an affidavit submitted in support of a search warrant issued by a magistrate, neither a trial court nor an appellate court should substitute its judgment for that of the magistrate by conducting a de novo

determination as to whether the affidavit contains sufficient probable cause upon which that court would issue the search warrant." *State v. George*, 45 Ohio St.3d 325, 544 N.E.2d 640 (1989), paragraph two of the syllabus.

> Rather, the duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed. In conducting any after-the-fact scrutiny of an affidavit submitted in support of a search warrant, trial and appellate courts should accord great deference to the magistrate's determination of probable cause, and doubtful or marginal cases in this area should be resolved in favor of upholding the warrant.

*Id.*

{¶ 16} In support of his assignment of error, appellant argues that the affidavit was defective in four ways. First, appellant argues that Zender's statement in his affidavit that a hand-to-hand transaction was observed, was proven to be false at the trial. "To successfully attack the veracity of a facially sufficient search warrant affidavit, a defendant must show by a preponderance of the evidence that the affiant made a false statement, either 'intentionally, or with reckless disregard for the truth.'" *State v. Waddy*, 63 Ohio St.3d 424, 441, 588 N.E.2d 819 (1992), quoting *Franks v. Delaware*, 438 U.S. 154, 155-156, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). "'Reckless disregard' means that the affiant had serious doubts about the truth of an allegation." *State v. McKnight*, 107 Ohio St.3d 101, 2005-Ohio-6046, 837 N.E.2d 315, ¶ 31. If an affidavit is found to

7.

contain a false statement, the reviewing court must then determine if the remaining contents are sufficient to support a finding of probable cause. *State v. Roberts*, 62 Ohio St.2d 170, 178, 405 N.E.2d 247 (1980).

{¶ 17} Similarly, appellant's second argument is that the affidavit was defective because it was impermissibly based on Zender's inference that a hand-to-hand drug transaction occurred. "While search-warrant affidavits will inevitably include undisclosed inferences, under Fourth Amendment analysis, there is 'a line between permissible police interpretation and usurpation of the magistrate's function.'" *State v. Castagnola*, 145 Ohio St.3d 1, 2015-Ohio-1565, 46 N.E.3d 638, ¶ 49, quoting *People v. Caffott*, 105 Cal.App.3d 775, 782, 164 Cal.Rptr. 499 (1980). "If the inference is significant, then the trial court should examine the affiant's animus. If the affiant acted intentionally or with conscious indifference, then the warrant should be invalidated and the evidence suppressed. However, if the affiant acted negligently, then the misstatement should be removed, the omitted underlying facts added, and the affidavit reassessed." (Internal citations omitted.) *Id.* at ¶ 50.

{¶ 18} Here, appellant does not argue that the allegedly false statement of a hand-to-hand transaction was made intentionally or with reckless disregard for the truth, nor does he argue that Zender's inference that a drug transaction occurred was made intentionally or with conscious indifference. Importantly, we find that the record does not support reaching such conclusions.

8.

{¶ 19} Therefore, even assuming that it is necessary to exclude the statements regarding a hand-to-hand transaction and the belief that a drug sale had occurred, the remaining portions of the affidavit contain sufficient information to support the magistrate's finding of probable cause. Specifically, the affidavit contains information that the Great Lakes Motel is a known high traffic drug area. In addition, D.A. was followed and subsequently stopped by law enforcement after he left room 116 of the Great Lakes Motel. During the stop, D.A. admitted that he just purchased crack cocaine from an individual in room 116, and when shown a picture of appellant, confirmed that was the individual who sold him the drugs. We hold that this information is sufficient to support a finding of probable cause to believe that evidence of criminal drug trafficking and possession would be located in room 116 of the Great Lakes Motel.

{¶ 20} Appellant, in his third and fourth arguments challenges the information provided by D.A. In his third argument, appellant argues that the information from D.A. should not have been included in the search warrant affidavit, because that information was obtained through an unconstitutional stop. However, appellant "has no standing to challenge, on constitutional grounds, the admissibility of illegally obtained statements made by a third party." *State v. Griffin*, 6th Dist. Erie No. E-88-45, 1989 Ohio App. LEXIS 4032, *7 (Oct. 27, 1989), citing *United States v. Bruton*, 416 F.2d 310, 312 (8th Cir.1969); *see also Alderman v. United States*, 394 U.S. 165, 171-172, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969) ("The established principle is that suppression of the product of a Fourth Amendment violation can be successfully urged only by those whose rights were

9.

violated by the search itself, not by those who are aggrieved solely by the introduction of damaging evidence."). Thus, there is no merit to appellant's argument that D.A.'s statements should be excluded.

{¶ 21} As his fourth and final reason why the trial court erred in denying his motion to suppress, appellant argues that D.A.'s statements fail to establish probable cause because there is no basis to determine that D.A. was credible. We disagree. Unlike an anonymous informant who provides hearsay information, law enforcement observed D.A. approach room 116 of the Great Lakes Motel and leave a minute or two later. Believing that a drug transaction had just occurred, Zender participated in a stop of D.A. As he was being stopped, D.A. was observed throwing something out of the window, which he later admitted was crack cocaine. In addition, a crack pipe was seen on the floor board of his car. Thus, we find that D.A. was sufficiently credible in his admission that he purchased drugs from appellant in room 116, which formed the basis for probable cause sufficient to issue a search warrant.

{¶ 22} Accordingly, we hold that the trial court did not err when it denied appellant's motion to suppress the evidence resulting from the search of room 116. Appellant's first assignment of error is not well-taken.

## B. Sufficiency and Manifest Weight

{¶ 23} In his second assignment of error, appellant argues that his conviction is based on insufficient evidence and is against the manifest weight of the evidence. Insufficiency and manifest weight are distinct legal theories. In reviewing a record for

10.

sufficiency, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. In contrast, when reviewing a manifest weight claim,

> [t]he court, reviewing the entire record, weighs the evidence and all
> reasonable inferences, considers the credibility of witnesses and determines
> whether in resolving conflicts in the evidence, the jury clearly lost its way
> and created such a manifest miscarriage of justice that the conviction must
> be reversed and a new trial ordered. The discretionary power to grant a
> new trial should be exercised only in the exceptional case in which the
> evidence weighs heavily against the conviction.

*State v. Lang*, 129 Ohio St.3d 512, 2011-Ohio-4215, 954 N.E.2d 596, ¶ 220, quoting *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997).

{¶ 24} To prove that appellant was guilty of possession of drugs in violation of R.C. 2925.11(A), the state must show that appellant "knowingly obtain[ed], possess[ed], or use[d] a controlled substance or a controlled substance analog." Appellant argues that the state failed to prove that he possessed the drugs, or that he did so knowingly.

{¶ 25} R.C. 2925.01(K) defines that "'Possess' or 'possession' means having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing

or substance is found." "Possession of a controlled substance may be actual or constructive." *State v. Robinson*, 6th Dist. Lucas No. L-10-1369, 2012-Ohio-6068, ¶ 17. "Actual possession involves immediate physical control." *Id.* "Constructive possession exists when an individual exercises dominion and control over an object, even though that object may not be within his immediate physical possession." *State v. Wolery*, 46 Ohio St.2d 316, 329, 348 N.E.2d 351 (1976).

{¶ 26} In *Robinson*, we upheld Robinson's conviction for possession of drugs where Robinson was the only person present in a very small house that he listed as his place of residence, his wallet was laying out in the open, and his photographs were found in a small bedroom that also contained counterfeit crack cocaine and torn corners of plastic baggies with residue. *Robinson* at ¶ 20. In so doing, we contrasted that situation with the one in *State v. Joyner*, 6th Dist. Lucas No. L-09-1058, 2010-Ohio-2794.

{¶ 27} In *Joyner*, we reversed Joyner's conviction for possession of drugs where at the time the police executed a "no-knock" search warrant, Joyner was found on the stairwell leading down to the living room. In the living room, small amounts of cocaine were discovered on a plate, and a woman was standing in the living room. Notably, no illicit narcotics or contraband were recovered from appellant's person, appellant's driver's license reflected a different address from the premises being searched, none of the mail recovered was addressed to appellant, and none of the utilities were registered in his name. Furthermore, there was no evidence linking a prior controlled purchase from the residence with appellant. We reasoned that "[t]he mere presence of [Joyner] in the

12.

residence where illegal drugs were found is, without more, insufficient to establish constructive possession." *Id*. at ¶ 13. Thus, we held that "[Joyner's] presence on a stairwell does not establish dominion and control over a plate in the living room." *Id.*

{¶ 28} Here, in contrast to *Joyner*, and similar to *Robinson*, circumstantial evidence exists to show that appellant knowingly exercised dominion and control over the heroin. Appellant was observed entering and occupying room 116 of the Great Lakes Motel. D.A. contacted appellant and purchased drugs from him in room 116 of the Great Lakes Motel. D.A. testified that he did not observe anyone else in the room, and there was no other testimony that anyone else was seen occupying room 116. Appellant's clothes, cell phone, and other items were found in the room, and according to Zender, it looked like appellant had been there for "some time." The drugs were found in a box that was visible and accessible from inside the room. Finally, when appellant saw the U.S. Marshals pull into the parking lot, he fled on foot, and when he was apprehended, $534 in cash was found on his person, which Zender testified was consistent with individuals involved in the sale of narcotics.

{¶ 29} From this evidence, we hold that when viewed in the light most favorable to the state, the jury's conclusion that appellant knowingly possessed the heroin was not based upon insufficient evidence. Likewise, upon weighing the evidence, we hold that this is not the exceptional case where the jury lost its way and created a manifest miscarriage of justice. Therefore, we hold that appellant's conviction for possession of

13.

drugs in violation of R.C. 2925.11(A) is not based on insufficient evidence or against the manifest weight of the evidence.

{¶ 30} Accordingly, appellant's second assignment of error is not well-taken.

## C. Costs

{¶ 31} Finally, in his third assignment of error, appellant argues that the trial court erred in imposing the costs of confinement and court-appointed counsel. The state agrees that the costs of confinement and court-appointed counsel should not have been imposed, but further argues that the trial court did not, in fact, impose those costs. Here, at the sentencing hearing, the trial court stated, "I am going to assess court costs. I'm going to order judgment thereon." Likewise, the sentencing entry states, "Court costs are assessed and judgment is awarded thereon." At issue is the meaning of the term "court costs" as used by the trial court.

{¶ 32} In *State v. White*, 103 Ohio St.3d 580, 2004-Ohio-5989, 817 N.E.2d 393, the Ohio Supreme Court also addressed a trial court's imposition of "court costs" against an indigent defendant. The Ohio Supreme Court analyzed the issue under R.C. 2947.23, which states, "In all criminal cases * * * the judge or magistrate shall include in the sentence the costs of prosecution, * * * and render a judgment against the defendant for such costs." Ultimately, the court concluded that "R.C. 2947.23 requires a judge to assess costs against all convicted criminal defendants, and waiver of costs is permitted -- but not required -- if the defendant is indigent." *White* at ¶ 14.

14.

**{¶ 33}** We hold that the trial court's use of "court costs" means only the "costs of prosecution" required by R.C. 2947.23. The trial court's use of "court costs" does not also mean the costs of confinement and appointed counsel provided for in R.C. 2929.18(A)(5)(a)(ii) and 2941.51(D), respectively, which are not mandatory, and which require a separate finding that the offender has the ability to pay that was not made in this case. We find that this holding is consistent with the Ohio Supreme Court's framing of the issue in *White*, and prevents us from creating error where error is not clear from the record and in so doing violate the presumption of regularity that attaches to all judicial proceedings. *State v. Raber*, 134 Ohio St.3d 350, 2012-Ohio-5636, 982 N.E.2d 684, ¶ 19. Importantly, if a trial court wishes to impose the separate costs of confinement and appointed counsel, it must explicitly do so.

**{¶ 34}** Therefore, because we hold that the trial court in this case only imposed the costs of prosecution as required under R.C. 2947.23, appellant's arguments pertaining to the imposition of the costs of confinement and court appointed counsel are without merit.

**{¶ 35}** Accordingly, appellant's third assignment of error is not well-taken.

**{¶ 36}** As a final matter, we recognize that our decision reaches a different result than that in *State v. McKeever*, 6th Dist. Sandusky No. S-18-022, 2019-Ohio-1635, ¶ 22, wherein we vacated an identical imposition of "court costs" because we could not discern what costs were awarded, and "the imposition of the costs of confinement and appointed counsel were not supported by the record." As here, the defendant in *McKeever* argued that the costs of confinement and appointed counsel should not have been imposed, and

15.

the state agreed. Notably, in *McKeever*, the state did not also argue that the trial court never imposed the costs of confinement and appointed counsel. Thus, the state did not suggest that there were additional costs imposed that should not be vacated, and we distinguish *McKeever* on that basis.

### IV. Conclusion

{¶ 37} For the foregoing reasons, we find that substantial justice has been done the party complaining, and the judgment of the Sandusky County Court of Common Pleas is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.

Thomas J. Osowik, J.

Gene A. Zmuda, J.
CONCUR.

_____
JUDGE

_____
JUDGE

_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.

16.