[Cite as *State v. Tolbert*, 2025-Ohio-4469.]

# COURT OF APPEALS OF OHIO

# EIGHTH APPELLATE DISTRICT
# COUNTY OF CUYAHOGA

STATE OF OHIO,                            :

    Plaintiff-Appellant,            :

                               No. 114748

    v.                                       :

QEYEON TOLBERT,                           :

    Defendant-Appellee.             :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** REVERSED AND REMANDED
**RELEASED AND JOURNALIZED:** September 25, 2025

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-24-689572-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Owen Knapp, Assistant Prosecuting Attorney, *for appellant.*

Brian M. Fallon and Daniel Tirfagnehu, *for appellee.*

Mathura J. Sridharan, Solicitor General, and Trane J. Robinson, Deputy Solicitor General, *for amicus curiae* Ohio Attorney General Dave Yost.

Kessler Defense LLC; Stephanie Kessler, Sixth Circuit Vice-Chair, Amicus Committee; and Sidney W. Thaxter, pro hac vice, *for amicus curiae* National Association of Criminal Defense Lawyers.

Amy R. Gilbert and Freda J. Levenson, *for amicus curiae* American Civil Liberties Union of Ohio Foundation.

Nathan Freed Wessler, pro hac vice, *for amicus curiae* American Civil Liberties Union Foundation.

DEENA R. CALABRESE, J.:

{¶ 1} Plaintiff-appellant State of Ohio ("the State") appeals the trial court's order granting the motion to suppress evidence collected pursuant to a search warrant executed at 403 E. 152nd Street, Apt. #1 ("the Apartment"), where defendant-appellee Qeyeon Tolbert ("Tolbert") resided. For the reasons stated below, we find that the trial court did not rule on whether the affidavit for the search warrant ("warrant affidavit") contained false or misleading statements, omissions, or significant undisclosed inferences. Therefore, we reverse the trial court's order granting the motion to suppress and remand for further proceedings consistent with this opinion.

## I. Facts and Procedural History

{¶ 2} This appeal stems from the trial court's suppression of evidence in a homicide case. Cleveland Homicide Detective Michael Legg requested a warrant to search the Apartment while investigating the murder of B.S., the victim. B.S.'s lifeless body, shot twice in the back, was found in his bathtub by paramedics on February 15, 2024. As described in more detail below, however, the shooting itself occurred on a street and was captured on video. Detectives were able to identify a suspect early in the investigation because they located B.S. on video prior to the

shooting and tracked his movements along with the suspect's both before and after the shooting.

**A. The Warrant**

{¶ 3} On February 20, 2024, Detective Legg presented a proposed search warrant to a Cuyahoga County Common Pleas Court judge ("issuing judge"). In the warrant affidavit, Detective Legg averred the following:

> [H]e has reasonable cause to believe and does believe, that within the premises described as . . . 403 E 152nd Street, Apartment #1, City of Cleveland, Cuyahoga County, Ohio . . . there is now being unlawfully kept, concealed and possessed the following . . . any and all evidence pertaining to the violations of the State of Ohio, to wit: R.C. 2903.01 Aggravated murder, R.C. 2903.02 Murder.

{¶ 4} The warrant affidavit lists the facts upon which Detective Legg based his beliefs. Those, in relevant part, are the following:

> 6. Affiant avers that he, along with other members of the Homicide unit, as well as the RTCC analyst, were able to view RTCC video and located the victim on video February 14, 2024.
>
> 7. Affiant avers that upon reviewing the surveillance video they observe the victim exiting the plasma center located at E 156th and Lakeshore Blvd at 1900hrs.
>
> 8. Affiant avers that the victim walks west on Lakeshore Blvd and continues south on E 152nd Street.
>
> 9. Affiant avers that a male walks from in between the apartment buildings located at 375 and 371 E 152nd Street and begins walking in front of the victim.
>
> 10. Affiant avers that in the area of 403 E 152nd Street, the unidentified male walks into a driveway located on the east side of the street, the same side the victim was still walking south on and allows the victim to pass by him.
>
> 11. Affiant avers that the unidentified male then begins walking behind the victim as they continue south on E 152nd Street.

12. Affiant avers that the unidentified male, wearing a dark colored Adidas sweatshirt and dark colored Adidas pants, approached the victim from the back as they neared Upton Avenue.

13. Affiant avers that the unidentified male suspect then produced a firearm and pointed it at the side of the victim while holding onto the victim with his other hand.

14. Affiant avers the suspect male then shot the victim twice and the victim fell to the ground at which time the suspect begins running north on E 152nd Street.

15. Affiant avers that the suspect ran south on E 152nd Street and then went northeast onto Shiloh Avenue. The victim then gets up from the ground and continues walking south on E 152nd Street and is believed to have walked to his residence located at 15704 School Avenue.

16. Affiant avers that the suspect returned to the scene of the shooting approximately five (5) to ten (10) minutes later after having changed his pants and appeared to be looking for something on the ground.

17. Affiant avers that the suspect is then observed walking back and then running towards the address of 403 E 152nd Street.

18. Affiant avers that on February 20, 2024, while watching live video of 403 E 152nd Street, believed to be the address where the unidentified suspect ran into, he observed a male matching the description of the suspect walking from the area of 403 E 152nd Street and continue to the store located at 15208 Lakeshore Blvd. This male having the same build, hair style, clothing and walking characteristics as observed on the suspect on February 14, 2024.

19. Affiant avers that he, along with other members of the homicide unit, as well [as] the Cleveland Division of Police video specialist, Tom Cuila, responded to the Lake shore food Market at 15208 Lakeshore Blvd and downloaded surveillance video showing the suspect male enter the store at approximately 1053hrs.

*20. Affiant avers that utilizing the Fusion center they received an identification of the, as of yet, unidentified male suspect, based on the recovered surveillance video, and it was learned this male was currently paroled to the address of 403 E 152nd Street, Apartment #1.*

21. Affiant avers that this same male suspect was observed, in real time, on February 20, 2024, exiting and re-entering the front (west) entrance of 403 E 152nd Street, located at the northeast corner of the dwelling.

(Emphasis added.)

**{¶ 5}** The issuing judge signed the warrant on the same day.

**{¶ 6}** On February 21, 2024, officers executed the search warrant on the Apartment. During the search, officers recovered a Taurus 9 mm firearm, a black Adidas jumpsuit, black and white Nike Dunks, several cell phones, and additional items. Officers also found and arrested Tolbert, who made statements to the police.

**{¶ 7}** On March 1, 2024, a Cuyahoga County Grand Jury indicted Tolbert on a total of 13 counts related to the February 14, 2024 homicide. These charges included aggravated murder, three counts of murder, three counts of kidnapping, two counts of felonious assault, two counts of aggravated robbery, having weapons while under disability, and tampering with evidence, all with multiple specifications.

## B. Motion to Suppress

**{¶ 8}** On November 13, 2024, after multiple pretrials and the exchange of discovery, Tolbert filed a motion to suppress all evidence collected during the February 21, 2024 execution of the search warrant on the Apartment. In the motion to suppress, Tolbert first argued that paragraph 20 of the warrant affidavit was a false or misleading statement or omission because it states that "utilizing the Fusion [C]enter they received an identification," while the Northeast Ohio Regional Fusion Center ("Fusion Center") disclaimer states that "[t]hese search results are not intended or permitted to be used as admissible evidence in a court of law or any

court filing." (Motion to suppress filed Nov. 13, 2024.)  Second, he argued that "any person or magistrate reading the affidavit would believe that the Fusion [C]enter identified the defendant based on the recovered surveillance video."  Next, Tolbert argued that paragraph 17 was misleading because it states that the male suspect is observed walking back and then running towards the address of 403 E. 152nd Street, but it does not say he is seen going into the dwelling at that address.  He argues that the assumption is that the male suspect is running towards that address but that the video does not show that he ran into the dwelling at 403 E. 152nd Street.  Lastly, Tolbert's motion argued that the warrant affidavit included undisclosed inferences because it withheld the disclaimer and affirmatively claimed an identification was made by the Fusion Center.

{¶ 9} The report that detectives obtained from the Fusion Center, which utilizes Clearview AI facial recognition technology as an investigative tool, included the following disclaimer:

> **DISCLAIMER: Facial recognition search results are to be treated as investigative leads and should not be solely relied upon for making an arrest.  Investigators are required to conduct thorough investigations, independently verify identifications, and adhere to applicable laws and agency policies regarding facial recognition search results.  The information in this document is for internal use only and should not be shared outside the user's agency.  These search results are not intended or permitted to be used as admissible evidence in a court of law or any court filing.**

(Emphasis in original.) (Motion to suppress filed Nov. 13, 2024.)

{¶ 10} Tolbert's motion to suppress requested that the trial court hold a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978), and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

## C. The Suppression Hearing

{¶ 11} On January 9, 2025, the trial court conducted a *Franks* hearing on Tolbert's motion to suppress.[1]  Detective Legg testified regarding the warrant affidavit and the homicide investigation.  He stated that he has been with the Cleveland Police Department for 29 years and has been a homicide detective since 2018.

{¶ 12} Detective Legg testified that the investigation into B.S.'s murder included the review of video from the City of Cleveland's Real-Time Crime Center's ("RTCC") system cameras to track B.S.'s movements on the day of his murder. Detectives were able to observe video footage of B.S. prior to his murder walking along Lakeshore Boulevard and then turning onto E. 152nd Street.  The footage then shows an unknown male wearing a dark-colored jogging suit appear near 403 E. 152nd Street.  This male is first seen walking in front of B.S., before turning and walking up the driveway of 403 E. 152nd Street, towards the front of the dwelling,

---

[1] Tolbert's motion to suppress also requested a *Daubert* hearing regarding the admissibility of facial recognition or artificial intelligence evidence.  A *Daubert* hearing determines the admissibility at trial of expert testimony on scientific matters.  The Ohio Supreme Court has adopted *Daubert* for analyzing issues arising under Ohio Evid.R. 702 in both civil and criminal cases.  *See Miller v. Bike Athletic Co.*, 80 Ohio St.3d 607 (1998); *State v. Nemeth*, 82 Ohio St.3d 202 (1998).  Because the State indicated at the suppression hearing that it did not intend to introduce facial recognition or artificial intelligence evidence at trial, there was no need for a *Daubert* hearing and the trial court conducted only a *Franks* hearing.

then the male can be seen returning to the street and walking behind B.S. before shooting him. After shooting B.S., the male suspect retreats back toward the area of 403 E. 152nd Street. Five to ten minutes later, the RTCC video footage shows the male suspect appear from the front yard area of 403 E. 152nd Street and return to the scene of the homicide. Detective Legg testified that after viewing the RTCC video footage, detectives identified the unknown male as their suspect.

{¶ 13} Detective Legg further testified that the area around 403 E. 152nd Street became the primary area of interest and Cleveland police detectives focused on monitoring RTCC live cameras in that area. One week after the shooting, detectives watching a live street-camera feed observed a male suspect, with similar build, hairstyle, clothing, and gait to the shooter, leave the area of 403 E. 152nd Street and go to a store on Lakeshore Boulevard. Detectives obtained surveillance video of the male suspect from the Lakeshore Boulevard store. They sent still images of the male suspect taken from the store's video to the Fusion Center. The Fusion Center produced a lead that the male suspect captured in the still images was Tolbert. Detectives learned that Tolbert was paroled to the Apartment, i.e., 403 E. 152nd Street, Apartment #1.

{¶ 14} On February 20, 2024, detectives observed the male suspect, now believed to be Tolbert, exit and reenter the front entrance of the Apartment. Detectives also compared the still images obtained from the Lakeshore Boulevard store video to other images of Tolbert to independently verify that their male suspect was indeed Tolbert.

{¶ 15} A supplementary police report dated February 21, 2024, signed by Detective Legg, offers additional information regarding the investigation. (Defendant's exhibit F.)  It explains that detectives learned that the front entrance of 403 E. 152nd Street opens directly into the Apartment.  It also clarifies that on February 20, 2024, when police observed the male suspect exit and reenter the Apartment, he appeared to be taking out the trash.

{¶ 16} Tolbert made additional arguments at the suppression hearing in addition to the arguments made in his motion to suppress.  First, he argued that the warrant affidavit is not clear as to which video was used to make the identification in paragraph 20.  Second, Tolbert argued that the Ohio Law Enforcement Gateway's ("OHLEG") report did not show the Apartment as the address he was paroled to, as averred in paragraph 20.  Third, Tolbert argued that the Fusion Center disclaimer should have been disclosed with the warrant affidavit.  Lastly, Tolbert argued that the warrant affidavit did not disclose that the male suspect is not seen going into and out of 403 E. 152nd Street on February 14, 2024, the day of the homicide, but that he is seen entering and exiting 363 E. 152nd Street that night.

{¶ 17} At the conclusion of the hearing, the trial court suppressed all evidence obtained during the search of the Apartment.  These items included a Taurus 9 mm firearm, a black Adidas jumpsuit, black and white Nike Dunks, several cell phones, and additional items.  The trial court stated the following regarding Tolbert's motion to suppress:

All right. Having signed I'm sure hundreds of search warrants, some can be misleading. Sometimes the affiant will misstate the gender for instance of an informant just to throw things off. I've seen that hundreds of times. That's not the case here. What we've got here is a judge being handed an affidavit saying that we have — I have what's called an anonymous informant here. And that certainly throws out a search warrant if you have an anonymous informant that you want to find out who it is. And the Fusion Center, I don't know what judge — how much [the judge] knew about it. But if this would have said — this affidavit or this information that we got was admittedly unreliable by the person who is giving you this information, that would throw up a red flag. That of course would. What I was interested in here is they had to put in the fact — the prosecutor — that the individual they're looking at was on parole. That's a little poison that they throw in there in this case. Important, I don't know. But I'm going to suppress this search warrant and exclude the evidence resulting from the execution of the warrant.

(Jan. 9, 2025 tr. 92-93.)

{¶ 18} The State appealed the trial court's decision, identifying a single assignment of error for our review:

The trial court erred in granting the Defendant's motion to suppress.

{¶ 19} The record reveals that a certifying statement was timely filed by the State as required under Crim.R. 12(K). We therefore have jurisdiction to proceed to the merits of this appeal.

## II. Law and Analysis

{¶ 20} In the sole assignment of error, the State argues that the trial court erred when it sustained Tolbert's motion to suppress evidence obtained during the execution of the search warrant on the Apartment. The State contends that there was probable cause for the issuance of the search warrant and that contrary to

Tolbert's arguments, no false statements, omissions, or improper undisclosed inferences were made in the warrant affidavit.

{¶ 21} The Fourth Amendment to the United States Constitution states:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

{¶ 22} The Ohio Supreme Court has held that in felony cases, Art. I, § 14 of the Ohio Constitution provides the same protection as the Fourth Amendment of the United States Constitution. *See State v. Smith*, 2009-Ohio-6426, ¶ 10, fn. 1.

{¶ 23} Crim.R. 41(C)(1) provides:

A search warrant shall issue on either an affidavit or affidavits sworn to before a judge of a court of record or an affidavit or affidavits communicated to the judge by reliable electronic means establishing the grounds for issuing the warrant. In the case of a search warrant, the affidavit shall name or describe the person to be searched or particularly describe the place to be searched, name or describe the property to be searched for and seized, state substantially the offense in relation thereto, and state the factual basis for the affiant's belief that such property is there located.

{¶ 24} Generally, "search warrants may only be issued upon probable cause, supported by oath or affirmation, particularly describing the place to be searched, and the persons or things to be seized." *State v. Jones*, 2015-Ohio-483, ¶ 11-12. "'[T]he term "probable cause," according to its usual acceptation, means less than evidence which would justify condemnation . . . . It imports a seizure made under circumstances which warrant suspicion.'" *Illinois v. Gates,* 462 U.S. 213, 235 (1983), quoting *Locke v. United States*, 11 U.S. 339, 348 (1813). "'To establish probable

cause to search a home, the facts must be sufficient to justify a conclusion that the property that is the subject of the search is probably on the premises to search.'" *State v. Marler*, 2009-Ohio-2423, ¶ 26 (2d Dist.), quoting *State v. Freeman*, 2006-Ohio-5020, ¶ 13 (4th Dist.).

{¶ 25} When determining whether to issue a search warrant, the deciding judge or magistrate considers "how stale the information relied upon is, when the facts relied upon occurred, and whether there is a nexus between the alleged crime, the objects to be seized, and the place to be searched." *State v. Castagnola*, 2015-Ohio-1565, ¶ 34, citing 2 LaFave, *Search and Seizure*, § 3.1(b), 3.7(a), (b), and (d) (5th Ed. 2012).

{¶ 26} The United States Supreme Court outlined the standard for a court approving a search warrant:

> The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.

*Jones v. United States*, 362 U.S. 257, 271 (1960); *State v. George*, 45 Ohio St.3d 325, 329 (1989) (following and quoting *Jones*).

{¶ 27} Appellate review of a motion to suppress involves a "mixed question of law and fact." *State v. Burnside*, 2003-Ohio-5372, ¶ 8. The trial court is "in the best position to resolve factual questions and evaluate the credibility of witnesses." *Id.*, citing *State v. Mills*, 62 Ohio St.3d 357, 366 (1992). "[A]n appellate court must accept the trial court's findings of fact if they are supported by competent, credible

evidence." *Id.*, citing *State v. Fanning*, 1 Ohio St.3d 19 (1982). "[T]he appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." *Id.*, citing *State v. McNamara*, 124 Ohio App.3d 706 (4th Dist. 1997).

{¶ 28} On appeal, the reviewing court must ensure that the magistrate had a substantial basis for concluding that probable cause existed. *George* at 329, citing *Jones* at 271. Reviewing courts, including trial courts conducting a suppression hearing, are to give deference to the magistrate's determination of probable cause. *George* at 330. When determining whether a search warrant has been issued upon probable cause, reviewing courts must examine the totality of the circumstances. *Jones*, 2015-Ohio-483, at ¶ 15, *see also Gates*, 462 U.S. at 238.

## A. False Statements and Omissions

{¶ 29} In *Franks*, 438 U.S. 154, the United States Supreme Court addressed whether a defendant could challenge the veracity of a sworn statement made by police when procuring a search warrant. The court ultimately found that

> where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request. In the event that at that hearing the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit.

*Franks* at 155-156. "There is . . . a presumption of validity with respect to the affidavit supporting [a] search warrant." *Franks* at 171.

{¶ 30} "'Reckless disregard' means that the affiant had serious doubts of an allegation's truth." *State v. Waddy,* 63 Ohio St.3d 424, 441 (1992), citing *United States v. Williams*, 737 F.2d 594, 602 (7th Cir. 1984).

{¶ 31} "Omissions count as false statements if 'designed to mislead, or . . . made in reckless disregard of whether they would mislead, the [issuing judge.]'" *Id.*, quoting *United States v. Colkley*, 899 F.2d 297, 301 (4th Cir. 1990). "Before an omission can be considered material, the defendant must show that the omission would have materially influenced the magistrate such that if the omission had been included in the affidavit it would have negated probable cause for issuance of the warrant." *State v. Wilhelm*, 1983 Ohio App. LEXIS 14912, *3-4 (6th Dist. Sept. 2, 1983).

{¶ 32} The first step under a *Franks* analysis is to determine whether Detective Leggs made a false statement knowingly and intentionally, or with reckless disregard for the truth, in the warrant affidavit. If the court determines that a false statement was made, the second step under a *Franks* analysis is determining whether the warrant affidavit still establishes probable cause after excising the portions that contain the false statement.

{¶ 33} The trial court never made findings regarding whether Detective Legg made any knowingly, intentionally false statements or made false statements with reckless disregard for the truth. Nor did the trial court determine whether the search

warrant affidavit's remaining content is sufficient to establish probable cause. *See State v. Kiraly*, 2009-Ohio-4714, ¶ 23 (8th Dist.). Therefore, we reverse the decision of the trial court and remand the matter for these determinations.

## B. Undisclosed Inferences

{¶ 34} Tolbert also argues that pursuant to *Castagnola*, 2015-Ohio-1565, "to withhold the [Fusion Center] disclaimer from the [issuing judge] and to affirmatively claim an identification was made by the Fusion Center is clearly usurping the [issuing judge's] function." (Motion to suppress filed Nov. 13, 2024).

{¶ 35} In *Castagnola*, the Ohio Supreme Court considered whether a search-warrant affiant's undisclosed evidentiary inference stated as an empirical fact usurped the inference-drawing authority of the magistrate who issued the warrant in reliance on the affidavit. The suspect in *Castagnola* was being investigated for retaliation, criminal trespassing, criminal damaging, and possession of criminal tools and was recorded stating he searched for the victim's address in court records. The detective that authored the warrant affidavit inferred that an "online" search was done on the suspect's computer rather than on his smart phone. This inference was never communicated to the warrant issuing judge who signed a search warrant allowing a search of the suspect's computer. The suspect was later charged with ten counts of pandering sexually oriented material after a search revealed the computer contained evidence of child pornography.[2]

---

[2] In *Castagnola*, the initial search of the computers revealed what appeared to be child pornography. Detectives then stopped their search to obtain a second search

{¶ 36} The Ohio Supreme Court sustained the suppression of evidence found

on the computer during the search, finding that

> courts have recognized that affidavits that include a factual narrative will inevitably include a number of inferences drawn by the affiant. *People v. Caffott*, 105 Cal.App.3d 775, 782 (1980). However, "the magistrate must be afforded the opportunity to test any significant inference drawn by the affiant." *People v. Smith*, 180 Cal.App.3d 72, 87 (1986). The facts upon which those inferences are based must be disclosed to permit a magistrate's independent review. *State v. Bean*, 13 Ohio App.3d 69, 74, 468 N.E.2d 146 (6th Dist.1983). *See also State v. Garza*, 2013-Ohio-5492, 5 N.E.3d 89, ¶ 25 (3d Dist.).

*Castagnola* at ¶ 40.

{¶ 37} The *Castagnola* Court also noted that "affiants may make reasonable

inferences within search-warrant affidavits." *Castagnola*, 2015-Ohio-1565, at ¶ 39.

The Court adopted the test laid out in *Caffott*, 105 Cal.App.3d 775:

> "[D]etermine whether the hidden inference was so significant as to cross the line between permissible interpretation and usurpation. * * * A hidden inference should be deemed significant if it can be fairly concluded that it had a substantial bearing on the magistrate's determination of probable cause in each of two respects:
>
> (1) *Relevance*: The more directly relevant the inference is to the magistrate's inquiry, the more substantial its bearing and the more significant it will be. * * *
>
> (2) *Complexity*: The more complex and attenuated the logical process by which a relevant conclusion is reached, the more important it is that the magistrate receive an opportunity to test the inference for validity as part of his neutral and detached function. Conversely, an inference so straightforward, and so patently within the affiant's area of expertise, as to be a matter of "routine interpretation" for the affiant is probably not so significant as to require the magistrate's review even though the conclusion thus reached is highly relevant."

warrant to search the contents of the computers for evidence relating to child pornography.

(Emphasis in original.) *Castagnola* at ¶ 12-13, quoting *Caffott* at 783.

{¶ 38} Tolbert argues there are two inferences that were made by Detective Legg. First, he argues Detective Legg's failure to include the disclaimer from the Fusion Center with the warrant affidavit usurped the issuing judge's function. The second inference Tolbert argues should have been disclosed to the issuing judge is in paragraph 20 of the warrant affidavit, which claims an identification was made by the Fusion Center. Tolbert argues that the Fusion Center report was a lead that stated that Tolbert was a "likely match" to the male suspect, but the inference is that there was a "positive identification" that Tolbert was the male suspect.

{¶ 39} The trial court never made any findings regarding the significance, and specifically the relevance or complexity, of the undisclosed inferences. Therefore, we reverse the decision of the trial court and remand the matter to the trial court for these determinations.

{¶ 40} For the reasons stated above, we reverse the trial court's decision and remand for further proceedings consistent with this opinion.

It is ordered that appellant recover from appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
DEENA R. CALABRESE, JUDGE

EILEEN T. GALLAGHER, P.J., and
EMANUELLA D. GROVES, J., CONCUR

KEYWORDS
#114748 - State v. Tolbert

Motion to suppress; search warrant; warrant affidavit; probable cause; *Franks v. Delaware*; *Franks* hearing; false statements; omissions; undisclosed inferences. Reversed and remanded. The trial court did not determine, pursuant to *Franks v. Delaware*, whether the warrant affidavit contained intentionally false statements or false statements with reckless disregard for the truth, nor did the trial court determine whether the search warrant affidavit's remaining content is sufficient to establish probable cause. The trial court also did not determine whether any significant undisclosed inferences were made in the search warrant affidavit.